## ROBINSON & COMPANY v. NIPP ET AL.

[No. 2,339.    Filed May 12, 1898.]

PRACTICE.—*Overruling Demurrer to Bad Answer.*—*Harmless Error.*— Available error cannot be predicated on the action of the court in overruling a demurrer to a defective answer where plaintiff was not injured by such defect.    pp. 157, 158.

PRINCIPAL AND AGENT.—*Acts Not Within Scope of Agent's Authority.* —*When Principal Bound By.*—The authority of an agent must proceed from his principal, and in ascertaining the extent of his au-

thority the court will look to what has been expressly or impliedly authorized before the performance of the act of the agent in question, and to the action of the principal in adopting or rejecting such act; if the subsequent conduct may be explained and understood in a sense consistent with a previously existing limitation upon the agent's authority, such subsequent conduct cannot furnish, as against the principal, a foundation for an implication of extended authority by way of ratification of an unauthorized act. *pp. 158-165.*

From the Henry Circuit Court. *Reversed.*

*William A. Brown,* for appellant.

*M. E. Forkner* and *J. H. Jones,* for appellees.

BLACK, J.—This was an action in which the appellant, a manufacturing corporation, sued the appellees upon a contract in writing called in the complaint a "promissory note," but which was in the form of a bill of exchange accepted by the appellees.

The court overruled a demurrer of the appellant addressed to a number of paragraphs of answer separately. It is claimed in argument for the appellant that the sixth paragraph of answer was not sufficient to withstand a demurrer. It is admitted that this paragraph was technically sufficient as an answer of failure of consideration, but it is contended that it was not sufficient as an answer of set-off, or as a pleading showing ground for affirmative relief. However faulty the form of the pleading, especially as to its prayer, it is clearly shown by the record that there was no recovery against the appellant upon any pleading seeking affirmative relief for the appellees, and that the paragraph in question was treated on the trial as a pleading setting up merely matter of defense. This is not only indicated in the instructions given to the jury, but the verdict was general, "for the defendants," and the judgment was "that the plaintiff take nothing by this cause of action, and that the defendants recover of and from said plaintiffs their

costs and charges herein laid out and expended."
Therefore, if the sixth paragraph of answer was defective as claimed by the appellant, such defect did
not work any injury to the appellant, and there was
not, because of it, any available error in overruling the
demurrer.

The appellant's motion for a new trial was overruled, and it is contended that there was error in the
admission of certain evidence, over the appellant's
objection. The so-called note was given with other
like notes for the purchase money of a certain traction
engine sold by the appellant to two of the appellees,
the other appellees being sureties. To secure the payment of these notes, the buyers executed to the appellant a mortgage upon the purchased property and also
a certain well-drilling machine with all tools belonging to and used in and about the same. The mortgage contained a provision that if default should be
made in the payment of any of said notes, or any part
thereof, or any interest thereon, the mortgagors
should forfeit title to the mortgaged property and
right to the possession thereof, and it should be lawful
for the mortgagee, or the agent, attorney, legal representative, successors or assignees of the mortgagee
to take immediate possession of the property without
legal process, and, after giving such notice as is required by law from a sheriff in making sale of chattels,
to sell the same at public auction, or so much thereof
as should be sufficient to pay the amount due, or to
become due, etc., the money remaining after paying
said sums, if any, to be paid on demand to the mortgagors.

The traction engine was sold by the appellant to the
mortgagors, under an order signed by the buyers and
accepted by the seller, subject to a warranty contained
in the order, that the engine was to be well built of

good materials.   The order also contained a "notice"
as follows:   "The machinery above described is or-
dered, purchased and sold, subject to this warranty
and no other, either express or implied.   No agent or
salesman has general agency powers, and is author-
ized only to make sales according to special instruc-
tions, and subject to the approval of the home office.
All agreements must be in writing and contained in
this order.   No agent or salesman has power to bind
the company by either verbal or written contracts or
promises outside of this contract.   This contract not
to be binding on the company until accepted by Rob-
inson & Co., at its home office, at Richmond, Indiana.
It is hereby expressly agreed between the parties to
this contract, that if anything except cash or notes is
taken by the agent in whole or in part settlement for
the machinery for which this order is given, Robinson
& Co. are not to be liable for its return or its value in
any event."   There was evidence of a certain defect in
the engine and of the giving of notice thereof to one
John J. Wilkinson, a local agent of the appellant, and
that a member of the company went to the place
where the engine was kept by the buyers at a time
when the first note given by appellees was due and un-
paid; that the company through him entered into a
conditional, written agreement with the buyers which
by its terms was, when carried out, to constitute a full
and complete settlement for all defects in the engine
and claims under the warranty.   This agreement pro-
vided for the repair of a specified defect in the engine
by the appellant after the payment by the buyers of a
certain amount upon the first note within a designated
time, and contained stipulations for subsequent pay-
ments.

The buyers did not make the first payment so pro-
vided for, and the engine was not repaired.   Some

time after the expiration of the period given for making such payment, the mortgaged property, including the traction engine and the well-drilling machinery, mentioned in the mortgage, was taken away by said Wilkinson from the possession of the buyers, and the property was sold in the manner provided for in the mortgage and was bought in by the appellant for $250, being less than the amount of said notes given by the appellees for the engine, which amounted to $800.00. Thereafter this action was brought on one of the notes for $350.00.

On the trial the appellees sought to establish that the property was so taken from the buyers under and pursuant to an agreement between them and the appellant, through said agent Wilkinson, for the release of the appellees and the surrender of the said notes in consideration of the surrender of said property by them; while on the part of the appellant it was sought to establish that the property was so taken and sold pursuant to the provisions of the mortgage, and not otherwise. In the course of the introduction on behalf of the appellees of the testimony of the appellee William Gray, one of the buyers, from whose custody the property was so taken by Wilkinson, the witness was permitted over the appellant's objection to testify that Mr. Wilkinson told the witness, "if we would let them have the engine and well machine without putting them to any further cost, that they would deliver the notes and cancel the debt."

. The ground of objection urged was that it was not shown that Wilkinson had any authority to make such statement. The witness further testified that, in answer to this statement of Wilkinson, the witness told him "All right, to take it," and that Wilkinson then took the machinery. It appeared in evidence that Wilkinson was the agent of appellant in the lo-

cality in which the appellees lived, to which the engine was sent, when purchased of the appellant, and that he had been such for six years.    It did not appear whether or not his appointment was written or oral. There was no evidence of the terms of his employment, and no evidence as to the nature of his authority in the matters in which he had been acting as agent during that period.

There was no evidence that the alleged settlement to which the witness testified had been ratified by the appellant with knowledge of the facts.    It was not shown how the appellant had held out the agent in any other transactions.    For the determination of the question whether or not it was shown that the agent had authority to make such a settlement or the buyers had a right to rely upon his possession of such authority by reason of the character in which he was held out by the appellant as its agent, we find no evidence in the record, except of matters connected with the particular transaction in which the note in suit was given.

We are inclined to think that the restrictions expressed in the "notice" contained in the order under which the engine in question was furnished so far related to the particular transaction of which the order formed a part, that it would not apply to transactions subsequent to a completed sale and delivery of the purchased property and the acceptance of notes and securities therefor, so as to negative conclusively the authority of the agent to make a settlement by accepting the surrender of the property upon an agreement to cancel the debt, if the evidence could be said to show that the appellant held out the agent as possessing authority to compromise on such terms.    It was shown by the evidence that the buyers first nego-

tiated with Wilkinson for the purchase of the engine, and after talking with him, they went with him to the appellant's shops at Richmond, Indiana. They there examined the engine. The written order was then signed at that place, and there was evidence that the mortgage was also signed at the same time. A few days afterward the engine arrived at New 'Castle and was there taken from the cars by the buyers and Wilkinson, and was then by Wilkinson delivered to the buyers. The notes were thereafter delivered by the buyers to Wilkinson. One of the buyers notified Wilkinson of the defect in the engine. When the first note became due Wilkinson demanded payment of the buyers. He was told by the buyers of the defect, and examined the engine, and then notified the appellant, whereupon in April, 1895, Mr. Robinson, a member of the company and its manager of collections went to New Castle and in company with Wilkinson visited the buyers, and as a result of the interview, the compromise conditional settlement already mentioned was then signed by the buyers and by the appellant, through Robinson. After the time for the first payment under that agreement had expired, Wilkinson demanded payment of the amount which was thus past due. Afterward, in June, 1895, Wilkinson went to the buyers and demanded the property. It was then that, as claimed by the appellees, the agreement for the surrender of the property and the cancelation of the debt was made between Wilkinson and the buyers. Wilkinson, testifying as a witness, stoutly denied the making of this agreement, and said he had not authority to make such a settlement. Robinson also in his testimony denied his knowledge of the granting of such authority. There was no evidence whatever of express authority from the appellant for such a settlement. There was evidence that Wilkinson had au-

thority to collect the debt, and that the company sent him to see if the buyers had any money for him, and that he went several times to see them for such purpose. He was directed by the appellant's attorney to go and get the mortgaged property, and thereupon in June, 1895, he took the property from the buyers to his own farm, and after having advertised it for sale, by posting up notices in four public places, three in the township, he caused it to be sold at public auction. It was bought in by the appellant, and at the time of the trial it had been shipped to the appellant at Richmond. Thus it appears that Wilkinson procured the customer, the sale being made by the appellant itself. He assisted in the delivery of the property at New Castle, and received the notes given for the property sold. He demanded payment of the debt. Under instructions from the appellant's attorney, he took possession of the property and caused its sale, the taking possession and the sale being in accordance with the terms of the mortgage, his acts in the premises being referable to the provisions of the mortgage in the absence of evidence of other authority from the appellant to which they could be referred.

We have carefully searched the record, and while we find no indication as to how the appellant held out this agent to the public, we have stated in substance all that is shown as to the character of his connection with this transaction. The authority of an agent must proceed from his principal. In ascertaining the extent of his authority we must look to what has been expressly or impliedly authorized before the act of the agent in question, or to the conduct of the principal after the act in relation thereto, by way of adopting or rejecting it. If, as here, the subsequent conduct may be explained and understood in a sense

consistent with a previously existing limitation upon the agent's authority, such subsequent conduct can not furnish, as against the principal, a foundation for an implication of extended authority by way of ratification of an unauthorized act of the agent. The taking of the property, its sale, and its purchase by the appellant, were all consistent with the terms of the mortgage, and the conduct of the appellant in this regard cannot alone support an inference that the agent had authority to make such a settlement as that to which the appellee Gray testified. If such a settlement was made, the subsequent sale was an idle and inconsistent proceeding. The taking possession by Wilkinson upon the order of the appellant's attorney, and the subsequent sale after advertisement, considered as indications of authority of the agent, were not favorable to the appellees.

If the agent only had authority to sell, or to negotiate sales, and to collect the price, certainly he had no authority to cancel the debt upon the surrender to him of the property constituting a security for the debt, without some access of authority.

It is true that the liability of the principal for the conduct of the agent is not to be determined alone by the authority actually given to the agent, but the principal will be bound as if he had conferred the authority which the third person dealing with the agent was justified in believing to have been given to the agent; but the third person is thus justified not by the words or acts alone of the agent, but by the words or conduct of the principal. There must be an appearance of authority caused by the principal, and the agent must have acted within its scope. We cannot conclude that the settlement to which the witness Gray testified was shown to be within the scope of authority shown to

have been possessed by the agent Wilkinson. The judgment is reversed, and the cause is remanded for a new trial.

Comstock, J., took no part in this decision.