Argued March 24, 1914, reversed January 12, 1915.

# SHERMAN v. CLEAR VIEW ORCHARD CO.

(145 Pac. 264.)

**Brokers—Oral Contract of Employment—Sale of Lands.**

1. A contract by an orchard company employing plaintiff to act as sales manager, organize a selling department, select suitable agents, and manage the company's selling force for a commission of 5 per cent on sales made by such agents or by himself was not a contract for the employment of an agent to sell real estate, and was therefore not invalid because not in writing, under Subdivision 8, Section 808, L. O. L., providing that an oral agreement, authorizing or employing an agent or broker to sell real property on commission, shall be void.

> [As to right of real estate broker to recover commissions under oral contract of employment when statute requires written contract, see note in Ann. Cas. 1915A, 1133.]

**Evidence—Relevancy—Res Gestae.**

2. In an action on a contract employing plaintiff as defendant's sales manager, evidence that, immediately after the interview with plaintiff at which he claimed the contract was assented to by defendant's president, the latter came into the next room, leaving the door open, and said in a loud voice to a director of the company that plaintiff wanted 5 per cent on all sales, and had been told that there was "nothing doing," was admissible as *res gestae*, though the court could not decide, as a matter of law, whether the language was used in plaintiff's hearing.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.    Statement by MR. JUSTICE MCBRIDE.

This is an action by G. E. Sherman against the Clear View Orchard Co., a corporation, to recover compensation for alleged services as sales manager of defendant corporation. The plaintiff, to sustain the issues on his behalf, offered evidence tending to show that

the defendant, a corporation, owned a large tract of land in the State of Oregon, which it desired to sell in tracts for orchard purposes, and that early in the year 1911, at Portland, Oregon, the plaintiff entered into a parol contract with the defendant corporation to act as sales manager in the sale of defendant's lands within the State of Oregon, to appoint subagents to effect said sales, the scope of the employment as claimed by the plaintiff being as follows:

"Well, I was to assume the entire charge of the selling force. I was to organize a selling force. I was to have entire charge and control of all of the selling agents to the Clear View Orchard Company. I was to establish selling agents wherever the proper man could be found at proper points where I could find the right man. I was to make a trip to the eastern part of the country for the purpose of locating agents there. My expenses were to be paid while on the road—traveling expenses while I was on the road in the interests of the company—and I was to receive a commission of 5 per cent on all sales made by the company. I was to have a desk in the office of the company, and it was provided that, if a sale was made by me directly, it would cost the company 5 per cent only. There would be no outside sale commission, and I would get only 5 per cent due to me as sales manager for the company."

To all of which evidence the defendant objected on the ground that the contract attempted to be proved by the plaintiff was within the statute of frauds, that the compensation was a commission on actual land sales, whether made through plaintiff individually, or through agents appointed by him, or through other agents of the company, and such contract was required to be in writing, which objection was overruled, and to which plaintiff excepted. Whereupon the testimony was per-

mited to go to the jury and to be considered by them in deliberating on their verdict; no evidence of a written contract or any contract other than parol contract being offered in said action. Plaintiff gave testimony further tending to prove that the total sales made by the company on which he was entitled to commission was $91,666. The plaintiff further offered evidence tending to show that the defendant was a corporation, organized under the laws of the State of Oregon, and that C. J. Schei was president of the corporation, and that one C. G. Andrews was secretary and treasurer of the corporation, and gave evidence tending to show that the plaintiff had had some negotiations with C. G. Andrews, and plaintiff testified:

"On Saturday afternoon Mr. Schei, Mr. Andrews and myself went into his private office, and we went over the details of this agreement, the organization and selection of selling force, and Mr. Schei asked me a considerable about it. We discussed this matter until late in the afternoon and went over the details of it. I remember particularly that after we had been in the office for an hour or so Mr. Schei asked Mr. Andrews if we had got to any agreement on terms. Mr. Andrews said, 'Yes,' Mr. Schei said, 'What is it?' Mr. Andrews said, 'Five per cent on the sales made.' Mr. Schei asked if that was to include the business done by Hambright-Mather & Wayland Co. (They were the Milwaukee agents.) They had been appointed, as I understand it, 60 days previous to this—to my coming out. There had been some dissatisfaction at that time. They said that the Milwaukee agents had been appointed for approximately two months. Mr. Schei and Mr. Andrews both said at that time that the business had not been as great as they had expected, and that was only as you could expect it in a new territory of that kind. The reply to Schei's question was 'Yes, that the sales were to be included in my commission.'

Mr. Schei wanted to know if that was agreed upon, and the answer was, 'Yes.' ''

There was further testimony offered tending to show that President C. J. Schei and Secretary and Treasurer Andrews were persons authorized to make a contract for the company, and that at the conversation referred to, where the plaintiff was present, and President C. J. Schei and Secretary and Treasurer Andrews were also attendant, the contract was finally consummated and agreed to, whereupon the defendant offered evidence tending to show that the conference referred to was had between the officers of the company, Andrews and Schei, and that Schei refused to consent to the agreement to employ the plaintiff as a sales manager, or otherwise or at all, and refused to pay him 5 per cent commission on all sales, and also offered testimony tending to show that one of the directors, Mr. Guisness, accompanied Mr. Schei to the office and, at the time of this conversation referred to, was in the room adjoining the room where the conversation between Schei and Andrews was taking place; that he was only a short distance from them; that Schei came out of the room where Mr. Guisness was, leaving the door open between the two rooms, and in a loud voice, and as the defendant contended in the hearing of the plaintiff, made a declaration with reference thereto, whereupon the plaintiff objected to the defendant's proving the declaration of Mr. Schei to Mr. Guisness. The plaintiff offered further evidence, Mr. Schei testifying to the effect that the plaintiff and Andrews were in the room when he came out, and, referring to the conversation of the witness Schei with Mr. Guisness, Mr. Schei said:

''I came out of the room right into the adjoining room, and my tone of voice was pretty loud, and I was

pretty mad about that time. The plaintiff was there and could hear what I said.''

The witness said that he was familiar with the rooms there, and that from where he was and from where the plaintiff and Andrews were, in his opinion, the plaintiff could hear what he said. Upon motion of the defendant, the statement of the witness that the plaintiff could hear what he said was stricken out; the court saying:

''The court does not think it is proper to answer that question in the way it is; but you can show the relative position and all the circumstances surrounding it; and it is for the jury to say whether they could hear or not, and the motion to strike the answer will be allowed.''

The plaintiff excepted, and the exception was allowed. The court excluded the testimony upon the objection of the defendant and would not allow Mr. Schei to state what he said to Mr. Guisness, and also refused to allow Mr. Guisness, when he was upon the witness-stand, to state what was said there. Defendant offered to show what Mr. Schei said to Mr. Guisness when he came into the room in the manner aforesaid, which the court refused to allow to be stated in the presence of the jury, as follows:

''Mr. Schei to Mr. Guisness: What would you think that fellow wanted [referring to plaintiff]? He wanted 5 per cent upon all the sales I made, and I told him that there was nothing doing.''

And by the ruling of the court said evidence was excluded from the jury, and the jury was not permitted or allowed to hear or consider the same, to all of which the defendant excepted, which exception was allowed.

REVERSED.

For appellant there was a brief over the names of *Mr. Thomas O'Day* and *Mr. Samuel Olson,* with an oral argument by *Mr. O'Day.*

For respondent there was a brief with oral arguments by *Mr. Jay Bowerman* and *Mr. Edwin V. Littlefield.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The first contention of defendant is that the contract disclosed by the foregoing statement is one for the sale of lands by an agent upon commission, and that, being wholly in parol, it is void, being within Section 808, subdivision 8, L. O. L., which provides that an agreement "authorizing or employing an agent or broker to sell or purchase real estate for compensation on a commission" shall be void, unless in writing, The question thus raised is an important one, and the concrete case here presented is so close to the line that it has been given more than ordinary consideration. We have finally concluded that it is not a contract for the employment of an agent to sell real estate.  The only characteristic it has of such a contract is the stipulation that the compensation shall be 5 per cent of the sales made by any agent or by the plaintiff himself; but the evidence of plaintiff indicates that his principal business was to organize the selling department, select suitable agents, and generally manage that branch of the business.  He was to create a selling force and manage it for the company, and it was this force which was to do the selling.  For this service plaintiff was to receive 5 per cent of the sales made and his expenses incurred in traveling and organizing the force.  The 5 per cent on sales was the measure of his

compensation for these services, and not for making sales of land. It is true that the contract, as detailed by plaintiff, contained a stipulation that, in case he himself made a sale, he was to receive 5 per cent commission on such sale, but this seems merely incidental to the principal contract; and while as to it he might be barred by the statute of frauds, yet, as no sale was made by him, that question does not arise here. There is a dearth of authorities precisely in point, but the following decisions seem to support the view announced above: *Griffith* v. *Daly,* 56 N. J. Law, 466 (29 Atl. 169); *Wilson* v. *Morton,* 85 Cal. 598 (24 Pac. 784).

2. Another objection urged is the ruling of the court excluding the testimony as to Schei's statement to Guisness immediately after his conversation with plaintiff. The evidence offered tended to show that immediately after the interview with plaintiff, at which interview plaintiff claims the contract was assented to by Schei, Schei came into the next room, leaving the door open, and said in a loud voice to Guisness:

"What would you think that fellow wanted? He wanted 5 per cent on all sales made, and I told him there was nothing doing."

This situation of the two rooms was detailed, from which it appears that plaintiff was sitting in the room which Schei had just left, and probably 12 feet from where Schei was standing when the remark was made; that the door was open; and that Schei was angry and spoke in a loud voice. No one will question that, if this had been uttered at that time in the hearing of the plaintiff, the testimony would have been admissible. If Schei had just assented to plaintiff's terms, it does not appear probable that he would in a few moments after have used this language in his hearing.

Under the circumstances, the court could not decide, as a matter of law, whether or not the language was used in the hearing of plaintiff, but should have let the testimony go to the jury as part of the *res gestae*.

For this error, the judgment is reversed and a new trial directed.                                    REVERSED.

MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.