[Civil No. 1806. Filed December 7, 1920.]

[193 Pac. 756.]

# LON D. HALL, Appellant, v. J. C. RANKIN, Appellee.

1. BROKERS—CONTRACT HELD NOT WITHIN STATUTE REQUIRING BROKER-
AGE CONTRACTS TO BE IN WRITING.—Contract, whereby principal
stockholder of mining corporation agreed to compensate other party
to contract for his services in inducing engineer of prospective
buyer of mine to make an inspection of the mine, *held* not within
Civil Code of 1913, paragraph 3272, subdivision 7, as amended
by Session Laws of 1919, chapter 135, requiring land brokerage
contract to be in writing; such contract being an employment
contract, and not one to sell the mine.

2. CONTRACTS—CONSTRUED TO BE EFFECTIVE RATHER THAN INEFFEC-
TIVE.—A contract will be construed to be effective rather than
ineffective, if it can be consistently done.

3. APPEAL AND ERROR—VARIANCE NOT AVAILABLE IN ABSENCE OF OB-
JECTION TO EVIDENCE.—Variance is not available on appeal in
absence of objection to evidence on such ground.

APPEAL from a judgment of the Superior Court
of the County of Yavapai. John J. Sweeney, Judge.
Judgment reversed and cause remanded.

Mr. A. L. Hammond, for Appellant.

Messrs. Clark & Clark, for Appellee.

BAKER, J.—Action of *assumpsit* for work and
labor done and performed by the plaintiff for the de-
fendant, at his special instance and request, in and

---

1. On power of legislature to prohibit offering another's real estate
for sale without authority, see note in 12 L. R. A. (N. S.) 707.

On power of legislature to require that contracts for commissions
for finding a purchaser for real estate shall be in writing, see notes
in Ann. Cas. 1913C, 727; 33 L. R. A. (N. S.) 973.

On necessity that authority of agent to purchase or sell real prop-
erty be in writing to enable him to recover compensation for his ser-
vices, see notes, in 44 L. R. A. 601 and 9 L. R. A. (N. S.) 933.

about "the examination, investigation and sale of certain mining properties." The plaintiff offered oral testimony tending to prove that the Henrietta mine belonged to the Braganza Mines Company, the defendant owning sixty-five per cent of the capital stock of the company; that the defendant approached the plaintiff and said to him substantially:

"I have been trying to sell the Henrietta mine to the Big Ledge people, but the mine must stand the inspection of Mr. Shockley, their engineer. I have had a 'racket' with him and I cannot get them to go out and look over the property. You know these people, and I want you to get their engineer on the ground, and if I get $150,000 for it I will pay you $25,000 for your services, and if I sell it for less I will pay you very liberally, and in any event I will pay you for your trouble and expense."

The plaintiff offered to prove also that he succeeded in causing the officers and the engineer (Shockley) of the Big Ledge Company to examine the mine, and that the defendant practically closed a sale of the mine for $100,000 and received a bonus or commission to himself of $25,000, and thereupon the defendant said to the plaintiff: "This is a good day's work and I will pay you liberally."

The defendant took the objection that the contract, not being in writing, was void, under the statute of frauds. The trial judge held the objection to be well taken and rejected the evidence and rendered judgment for the defendant.

We construe the contract as one of employment or agency rather than one to "sell real estate, mines or other property, for compensation or commission." Statute of Frauds, paragraph 3272, subd. 7, Rev. Stats. Arizona 1913, as amended by chapter 135, Session Laws of Arizona of 1919. We would not be justified in straining the terms of the contract so as to bring it within the statute of frauds and thus do a great in-

justice to the plaintiff. It is a familiar canon of con-
struction to construe a contract, if it may consistently
be done, to be effective, rather than ineffective.
''Where a . . . contract as a whole is susceptible of
two meanings, one of which will uphold the contract
or render it valid and the other of which will destroy
it or render it invalid, the former will be adopted so
as to uphold the contract.'' 13 C. J. 539; *Hobbs* v.
*McLean,* 117 U. S. 567, 29 L. Ed. 940, 6 Sup. Ct. Rep.
870 (see, also, Rose's U. S. Notes). The statute of
frauds, of course, is binding upon us and must be
obeyed and enforced whenever a case falls within its
provisions, but it was remarked by Chief Justice
BUCHANAN, in delivering the opinion in *Lamborn*
v. *Watson,* 6 Har. & J. (Md.) 255, 14 Am. Dec. 275,
where the defense under the statute was successfully
relied on, for the protection of a dishonest defendant,
that the statute ''probably generates as many frauds
as it prevents.'' The subdivision of the statute re-
ferred to was clearly designed to protect owners of
real estate against unfounded claims of brokers (*Gor-
ham* v. *Heiman,* 90 Cal. 346, 27 Pac. 289) and con-
templates a transaction between parties contracting
with each other as principals. That is not the case
here. In this case the plaintiff, as agent, undertook
to perform for the defendant, who was not the owner
of the mine, certain services, and the defendant
undertook to make compensation therefor. The
plaintiff was employed to get the engineer of the Big
Ledge Company on the mine for the purposes of in-
spection; he was not employed to sell the mine—that
was the business of the defendant. The only char-
acteristic in the contract, indicating that the employ-
ment of the plaintiff was to sell real estate, is the
stipulation that his compensation for his services
should be $25,000 if the defendant sold the mine for
$150,000, and if the mine was sold for a less amount

that the plaintiff should be paid liberally. We think that this provision should be construed as fixing merely the "measure" of the plaintiff's compensation and not that it is to be considered as one of the terms of a contract for the sale of the mine.

It is true that the plaintiff's proposed testimony further tended to show that the plaintiff explained the merits of the property to Shockley, including that portion of the property which was inaccessible by reason of being under water or from the tunnels, drifts, and shafts being caved in; but these services seem to have been voluntary and merely incidental and collateral to the contract. The suit is not one to recover "compensation" or "commission" for the sale of real estate, but to recover the reasonable value of the services of the plaintiff as the agent of the defendant. That the pleader did not have a clear concept of the principles of law governing the facts of the case is apparent, and the complaint in this respect may stand in need of amendment; but no objection was made to the evidence on the ground of a departure or variance and that question is not before us.

The defendant accepted the benefits of the plaintiff's services and practically completed the sale of the mine for $100,000 and received a bonus or commission to himself of $25,000. It seems to us that it would be highly inequitable to construe the contract so as to bring it within the provisions of the statute of frauds and thus enable the defendant to perpetrate a wrong, unless that is the only reasonable construction which can be given to the contract.

We do not think that the California cases (*Aldis* v. *Schleicher*, 9 Cal. App. 372, 99 Pac. 526, and *Sellers* v. *Solway Land Co.*, 31 Cal. App. 259, 160 Pac. 175) should govern the present case. They were clearly suits instituted to recover "commissions" for the sale

of real estate. The contract in this case contains elements differentiating it from the contracts in the California cases.

We cite in support of our conclusions the cases: *Wilson et al.* v. *Morton et al.,* 85 Cal. 598, 24 Pac. 784; *Sherman* v. *Clear View Orchard Co.,* 74 Or. 240, 145 Pac. 264; *Griffith* v. *Daly,* 56 N. J. L. 466, 29 Atl. 169; *Watters* v. *McGuigan,* 72 Wis. 155, 39 N. W. 382; *Carr* v. *Leavitt,* 54 Mich. 540, 20 N. W. 576; *Rose* v. *Hayden,* 35 Kan. 106, 57 Am. Rep. 145, 10 Pac. 554. The facts of the cases cited may, and do, differ from the facts of the present case in several particulars; but it is clear to us that the principles of law running through the cases are applicable to, and must control, this case.

The judgment is reversed and cause remanded.

ROSS, J., concurs.

CUNNINGHAM, C. J. (Dissenting).—I cannot concur in the reasons given by the majority of the court for reversing the judgment. The testimony nowhere defines Rankin's relation to the mine, the sale of which is involved; and, under the authorities relied upon, if he contracted as the owner the statute requires the promise to be in writing. If he contracted as the controlling stockholder of the owner, for and in behalf of such owner, then the promise was that of his principal, and not the contract of Rankin. In which last contingency the testimony offered should have been rejected for the reason it is not within the issues.

Why did Rankin say to Hall that the Braganza Mines Company owned the Henrietta mine and that he (Rankin) owned sixty-five per cent of the stock of that corporation, unless it was for the purpose of disclosing to Hall the principal for whom Rankin was

contracting? The statute, paragraph 3272, Revised Statutes of Arizona of 1913, is enacted to prevent the ungrounded claims of agents for commission or compensation in the sale of mines. If the statute in its scope is limited to the actual sellers and purchasers and not to those who assume to be the owners of the buyers, when in fact such persons are agents, I think the scope is thereby too greatly restricted.

The plaintiff in this case has a clear remedy which he may enforce in the courts, if he was promised a portion of the compensation received by Rankin. Otherwise, if Rankin acted as the owner of the mine and employed the plaintiff to assist him in selling it, the contract of employment must be in writing.