[No. 19037. Department Two. May 7, 1925.]

CHELAN ORCHARDS, *Respondent*, v. H. J. OLIVE, *as Executor of the Estate of Walter M. Olive, Deceased, Appellant.*[1]

FRAUDS, STATUTE OF (20)—CONTRACT FOR BROKERS' COMMISSIONS. A contract employing a general manager for a corporation on a salary, with a percentage of commissions on excess sales, is one of general employment and is not within Rem. Comp. Stat., § 5825, requiring a contract to pay a broker's commission to be in a writing which must describe the real estate sold.

CONTRACTS (63)— CONSTRUCTION — PAYMENT OF COMPENSATION — AMOUNT "REALIZED" FROM. SALES. A general manager's contract of employment agreeing to pay him a salary and seven per cent on the "net amount" "realized" from excess sales, at the date of discontinuance of his service, means the net amount converted into actual money, and does not include the amount represented by contracts and mortgages unpaid to the company on its sales.

MACKINTOSH, J., dissents.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered September 13,

[1] Reported in 235 Pac. 805.

1924, in favor of the plaintiff, upon sustaining a demurrer to defendant's counterclaim, in an action to establish a claim against the estate of a decedent. Affirmed.

*Sumner & Lebeck,* for appellant.

*Bronson, Robinson & Jones,* for respondent.

HOLCOMB, J.—Respondent sued appellant, as executor of his decedent's estate, upon a rejected claim. The allegations of the complaint were admitted by appellant in his second amended answer, and no question is raised upon the cause of action of respondent on this appeal.

In his second amended answer, appellant alleged a counterclaim against respondent based upon a contract made and entered into between appellant's decedent and respondent. By his counterclaim and cross-complaint appellant demanded a judgment against respondent, after allowing deductions of the amounts set up in respondent's cause of action, for the sum of $14,718.97, with interest. To the counterclaim and cross-complaint respondent demurred upon the ground that the facts stated were insufficient to constitute a good cause of action or counterclaim. The trial judge sustained the demurrer, appellant elected to stand upon his pleading, and a judgment of dismissal was entered. This appeal results.

Two grounds were urged by respondent in support of its demurrer, one of which was that the contract in question was void under the statute of frauds, Rem. Comp. Stat., § 5825 [P. C. § 7745], because it lacked any description of the property to be sold. The other ground urged is that the counterclaim and cross-complaint shows on its face that the sum claimed had not been earned according to the terms of the contract.

The contract, omitting immaterial parts, is as follows:

"This agreement made and entered into this 12th day of June, 1920, by and between Chelan Orchards, formerly Manson Farm Company, a corporation, party of the first part; and Walter M. Olive, party of the second part; Witnesseth as follows:

"Whereas, party of the first part has recently purchased through the bankruptcy court, the properties formerly belonging to the Lake Chelan Land Company, a corporation, bankrupt, whereof the party of the second part has been acting as trustee in bankruptcy, and by reason of his familiarity with the properties and knowledge of the business, party of the first part is desirous of obtaining his services as general manager for said properties and party of the second part is desirous of taking employment with the first party as such.

"Now, in consideration of the premises, it is mutually agreed as follows: Party of the second part agrees to act as general manager for the party of the first part, and give his time and best efforts to the care, management and disposal of its property in accordance with such policy as may, from time to time, be adopted by the board of trustees. . . .

"The party of the first part will pay party of the second part a salary of twenty-five hundred dollars ($2,500.00) per year, from and after May 15th, 1920, payable semi-monthly upon the first and fifteenth days of each calendar month, and also repay him such items of reasonable necessary expense as he may incur and pay in and about the performance of his duties as general manager.

"The party of the first part further agrees, that if the party of the second part continues in its service as general manager until the sum of $240,000.00 net with interest thereon at the rate of seven per cent per annum has been realized on the sale of the assets of the party of the first part, which $240,000.00 represents the notes now being issued to the stockholders of the party of the first part as part of the program for liquidation, the said party of the first part will, as a

further consideration, pay to the said party of the second part on the net amount realized from the sale of the company's assets over and above the sum of $240,000.00 representing said notes, the sum of five per cent; and if in addition to the said sum of $240,-000.00 net with seven per cent interest, representing the said notes the additional amount realized from the sale of the assets shall exceed the further sum of $240,000.00 net, representing the stock now being issued as a part of the program of liquidation, party of the first part will pay to party of the second part an additional five per cent, on the amount so realized in excess of the net sum of $480,000.00 with seven per cent interest on the sum of $240,000.00 as above provided.

"It is further provided, understood and agreed, that if, for any reason party of the second part shall not continue in the service of the said party of the first part, the percentages of compensation due him hereunder, will be calculated on the net amount realized at the date of discontinuance of such service."

We agree with appellant, contrary to the contention of respondent, that the foregoing contract is not a real estate brokerage contract governed by the statute above referred to. It is a contract of general employment. *Sherman v. Clear View Orchard Co.*, 74 Ore. 240, 145 Pac. 264; *Bates v. Oregon American Lumber Co.*, 285 Fed. 666, also an Oregon case in the Federal district court, decided by Judge Wolverton.

However, such decision as to the nature of the contract does not mean that the appellant is entitled to recover.

By the terms of the contract, respondent was empowered to discharge appellant's decedent at any time, and he was probably entitled to discontinue his services at any time. The last paragraph of the contract stipulated that if, for any reason, party of the second part should not continue in the service of the party of the first part, the percentages of compensation payable

under the contract should be calculated on the net amount realized at the discontinuance of such service. Other provisions of the contract stipulated that after $240,000 net, with interest, had been realized on the sale of the assets of the Orchard Company, it would pay a further consideration to Olive on the net amount realized from the sale of the company's assets of five per cent on the amount so realized in excess of $480,-000. It is true there is another stipulation in the contract to the effect that the care, management and disposal of the property should be in accordance with such policy as should be from time to time adopted by the board of trustees of the Orchard Company. It is to be presumed, as alleged, that all of the sales were made by Olive, alleged to be in the total sum of $523,-585.18, of which only the sum of $56,275.53 was received in cash, and the remainder was represented by contracts and mortgages. Doubtless, sales upon contracts and mortgages were in conformity with the directions of the trustees of respondent as provided by the contract. Appellant forcibly argues that these sales, all made in good faith, were realized amounts, and that it was not contemplated nor intended by either party in the contract that such sales meant sales for actual cash.

It is true that the word "realize" is a very comprehensive one. It may not always necessarily mean to convert into actual money or cash, and if the language of the contract had been merely that from the amounts realized from sales of the property over and above the stipulated sum Olive should receive the agreed percentage, we perhaps should accept the construction urged by appellant; but when the word is used repeatedly in connection with the words "net amount," we must assume that both parties used the word in the contract advisedly.

"Realize" is defined by lexicographers as follows:

"Realize, v. t., 6. To convert into actual money; as, to realize assets. Realize, v. i., to convert an intangible right or property into real (tangible) property; hence, to convert any kind of property (considered as fluctuating or uncertain in value) into money, especially rights or securities representing investments or speculations as shares, bonds, etc." Webster's International Dictionary.

It is defined in 33 Cyc. 1558, as follows:

"To bring into actual possession; a term ordinarily used in contrast to 'hope' or 'anticipation;' to give effect to; to reduce to actual cash in hand; to render tangible for the purpose of division."

See, also, the following cases which have been examined, from which the above text in Cyc. was derived: *Lorillard v. Silver,* 36 N. Y. 578; *Hall v. Henderson,* 84 Ill. 611; *Stanford v. Greene County,* 18 Iowa 218; *In re Oxford Benefit Building & Investment Society,* 35 Ch. D. 502, 55 Law T. (N. S.) 598.

*Lorillard v. Silver, supra,* an early case in New York, was first reported in 25 Barb. (N. Y.) 122, in which the *nisi prius* court held that an owner of land, who agrees to pay a percentage in the event of his realizing a specific sum of money for the land, becomes bound to pay such percentage the moment a responsible person in good faith offers that amount for the land. This rule was adopted and incorporated in Anderson's Dictionary of Law. On appeal to the appellate division of the supreme court, that court reversed the trial court and held that its ruling was erroneous.

In *Bittiner v. Gomprecht,* 28 Misc. Rep. 218, 58 N. Y. Supp. 1011, the court held that, where defendant agreed to pay an attorney a certain sum for his services in case they should realize "not less than" a

specified amount on their claim, and they compromised for a lesser amount, the attorney could not recover in the absence of fraud. Among other things, the court observed:

"That was the agreement the parties chose to make. We cannot make another for them. . . . The word 'realize,' used in connection with the conversion of claims or demands into money, is a very broad term, probably as broad as any in the language or law, and may reasonably be said to include the term 'compromise.' We must presume that it was used advisedly. A more restricted expression could readily have been adopted."

In *Weldon v. Newsom*, 67 Colo. 502, 186 Pac. 516, that court held:

"The profits, according to the contract pleaded, were such as 'might be realized.' The term 'realize,' as used under the circumstances, means 'to reduce to actual cash in hand.' 33 Cyc. 1558. The cause of action as set forth in the complaint, had not accrued at the time the action was commenced or at the time of trial. The action was therefore prematurely brought."

Hence, we are forced to conclude that appellant's decedent had not earned the commissions claimed, and that the judgment of the trial court was correct.

Affirmed.

TOLMAN, C. J., FULLERTON, and MITCHELL, JJ., concur.

MACKINTOSH, J., dissents.