[No. 21799.   Department One.   August 6, 1929.]

CORPORATE LOAN AND SECURITY COMPANY, *Respondent,*
v. W. H. LITCHFIELD *et al., Appellants.*[1]

*Oliver Hulback* and *F. R. Burch,* for appellants.

*Karr & Gregory* and *Charles L. Harris,* for respondent.

BEALS, J.—Plaintiff, as assignee of Mr. Frank H. Brown, sued defendants, who are husband and wife, praying for judgment against them for a balance alleged to be due on account of a contract between defendant W. H. Litchfield and Mr. Brown (who will hereafter in this opinion be referred to as though he were himself the plaintiff in the action), by the terms of which contract defendants employed him to assist in the sale of real estate in King county, plaintiff to receive for his services two and one-half per cent on all sales of property belonging to a designated client

[1]Reported in 279 Pac. 745.

of defendants, the same percentage on sales of land belonging to other clients and two and one-half per cent on all sales of defendants' own property, under the first agreement the percentage to be computed, as to defendants' property, on the sale price, by a later agreement to be computed on all amounts for which sales of defendants' land should be made in excess of the amount of the mortgages thereon. Plaintiff attached to his complaint, as Exhibit "A," two pages of items showing the different sales upon which he claimed percentages, together with the respective amounts thereof, and the aggregate claimed by him from defendants in the sum of $2,528.42, less cash received in the sum of $1,652.26, leaving a balance due plaintiff in the sum of $876.16, for which plaintiff demanded judgment. A demurrer was interposed to plaintiff's complaint, which was overruled, to which ruling defendants excepted. Defendants then filed an answer, and by leave of court thereafter filed an amended answer, denying any liability to plaintiff and setting forth two affirmative defenses, one of which included a plea of the statute of frauds, to all of which plaintiff replied with appropriate denials. From a judgment in plaintiff's favor in the sum of $579.33, defendants appeal.

For the sake of brevity, W. H. Litchfield will hereafter be referred to herein as though he were the sole appellant.

It clearly appears from the record that the only controversy between the parties to this action concerns respondent's claim for commissions on sales of appellant's own property. Respondent's counsel twice referred to this as the only issue in the case.

During the period covered by the transactions between the parties to this action, appellant was engaged in the business of selling real estate, operating chiefly

in the northeast portion of the city of Seattle. He was also building houses on his own property and selling them, and did some general contracting. Respondent testified that his employment, from the spring of 1922 to the spring of 1928, was to assist appellant in "selling real estate, his houses and vacant lots here and there." He testified that, under the first agreement between the parties, respondent was to receive one-half of all commissions that came into the office; that he was to keep the office open, light the fire and keep the room clean, in addition to showing properties to prospective customers. As above stated, respondent claims that his arrangement with appellant was later modified to the extent that, in computing commissions on the sale of appellant's own property, the percentage should be computed only on the equities, and not upon the entire sale price.

Appellant contends that he was entitled to judgment dismissing respondent's action, for the reason that the agreement between the parties was oral, and that the same comes within the scope of Rem. Comp. Stat., § 5825, which provides that certain contracts are void unless some note or memorandum thereof be in writing, signed by the party to be charged therewith, including "(5) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

This court has held that agreements between brokers to divide commissions earned on sales of real estate do not fall within the purview of the statute above quoted. *Orr v. Perky Investment Co.,* 65 Wash. 281, 118 Pac. 19; *Leigh v. Yancey,* 67 Wash. 18, 120 Pac. 512. On the other hand, as between the owner and the broker, the provision of the statute above quoted has been repeatedly upheld. *Keith v. Smith,* 46 Wash. 131, 89 Pac. 473, 13 Ann. Cas. 975; *Briggs v. Bounds,* 48

Wash. 579, 94 Pac. 101; *Collins v. Harris,* 130 Wash. 394, 227 Pac. 508.

Respondent relies upon the case of *Chelan Orchards v. Olive,* 134 Wash. 324, 235 Pac. 805, in which this court held that a contract of employment, which provided for the payment to the agent, by the owner of a large amount of property recently purchased from the estate of a bankrupt, of an annual salary, reimbursement for expenses and a percentage on any sum realized from the sale of the assets over and above a specified amount, was not a real estate brokerage contract, but was a contract of general employment. The distinctions between the case cited and the case at bar are many. In the case cited, the employee was to receive an annual salary and was evidently expected to devote much of his time and effort to the business of his employer in consideration therefor. This salary he was to receive irrespective of the amount of his employer's property which he might be able to dispose of. He was also expected to spend his own money, for which he should be reimbursed. The percentage he was to receive was to be computed only on the net amount of the sales of the employer's property in excess of specified aggregates.

Respondent in the case at bar seems to contend that his contract was one of general employment within the rule laid down in the case last cited, because he was to light the fires in the office and sweep the floor. Respondent was to receive no regular salary for any such services, but was working strictly upon a commission basis. We cannot hold that such incidental services, which tended more to respondent's own comfort and convenience than that of any other person, make his contract with appellant one of general employment. In so far as respondent was to show properties to pro-

spective purchasers, such services amount to no more than those usually performed by a real estate broker. We conclude that the case cited is not applicable to the facts presented by the record now before us.

In this connection, respondent also cites several cases from other jurisdictions, which will now be considered. In the case of *Sherman v. Clear View Orchard Co.*, 74 Ore. 240, 145 Pac. 264, it was held that a contract between an orchard company and an individual who was employed to act as its sales manager, organize a selling department, select sub-agents and manage the company's selling force for a percentage of five per cent, computed on sales made either by the sub-agents or by himself, was not a contract of employment of a broker to sell real estate, and was therefore not invalid because resting in parole. In the course of its opinion, the court says (Italics supplied):

"The question thus raised is an important one, and the concrete case here presented is so close to the line that it has been given more than ordinary consideration. We have finally concluded that it is not a contract for the employment of an agent to sell real estate. The only characteristic it has of such a contract is the stipulation that the compensation shall be 5 per cent of the sales made by any agent or by the plaintiff himself; but the evidence of plaintiff indicates that his principal business was to organize the selling department, select suitable agents, and generally manage that branch of the business. He was to create a selling force and manage it for the company, and it was this force which was to do the selling. For this service plaintiff was to receive 5 per cent of the sales made and his expenses incurred in traveling and organizing the force. The 5 per cent on sales was the measure of his compensation for these services, and not for making sales of land. It is true that the contract, as detailed by plaintiff, contained a stipulation that, in case he himself made a sale, he was to receive 5 per cent commission on such sale, but this seems

merely incidental to the principal contract; *and while as to it he might be barred by the statute of frauds, yet, as no sale was made by him, that question does not arise here.*"

In the case of *Bates v. Oregon-American Lumber Co.,* 285 Fed. 666, Wolverton, district judge, overruled a demurrer to a complaint in which judgment was sought for services claimed to have been rendered under a contract whereby the agent was employed to assist and aid in developing a large tract of timber land, in devising ways and means of securing the best possible returns therefrom and to collaborate with the owner of the land in managing the same. Plaintiff had no authority to buy or sell land except as his employer might direct and approve, and was a mere agent subject to special instructions and the specific directions of his employer. The court held that, under the allegations of the complaint, it appeared that the plaintiff was not employed upon any basis of receiving fixed commissions or compensation, and that the complaint was not obnoxious to a general demurrer.

Respondent's employment was very different from that of the plaintiff in the case last cited, which case does not support respondent's contention here.

The supreme court of Arizona, in the case of *Hall v. Rankin,* 22 Ariz. 13, 193 Pac. 756, held, in a two-to-one decision, that a verbal agreement between the parties to the action, pursuant to which the plaintiff induced the engineer of a prospective purchaser of mining property to visit a mine owned by a corporation in which defendant held sixty-five per cent of the capital stock, the negotiations in which plaintiff participated finally resulting in a sale of the mine, constituted a legal obligation to pay plaintiff for his services. The opinion of the court indicates that the facts of the case more nearly amounted to an agreement between the

parties to divide a commission, as the defendant received a bonus or commission from the corporation which owned the property upon the completion of the sale thereof. The facts of this case are so different from those presented in the record now before us that the opinion of the court is not authority for the judgment in favor of respondent.

We are of the opinion that, in so far as the contract between these parties contemplated the payment of commissions to respondent by appellant on the sale of appellant's own property, the contract is an ordinary brokerage contract for the payment of a commission on the sale of real estate between the owner thereof and a broker, and that the contract falls within the bar of the statute of frauds.

Appellant also contends that, as during a portion of the period covered by the contract between the parties to this action, respondent had no broker's license, he cannot, for that reason, recover judgment against appellant. On this question, the record is confused as to during just what period respondent was a regularly licensed broker, and during what period he had no license. We are of the opinion that the services rendered by respondent constituted such services as required the issuance of a license to the person rendering the same. In view of our opinion upon the first question discussed, this question, however, is unimportant.

For the reasons stated, the judgment appealed from is reversed with directions to dismiss the action.

FULLERTON, TOLMAN, and FRENCH, JJ., concur.

HOLCOMB, J. (dissenting)—What the contract between Brown and appellant was in this case, is a mixed question of law and fact. I cannot construe the contract as do the majority. The opinion minimizes the

nature of the services performed by Brown as an office man for appellant, in stating that his duties in the office were to light the fires in the office and to sweep the floor. Under the undisputed evidence in the record, his duties were to do general office work, consisting of opening the office in the morning, cleaning and sweeping the building, lighting fires when necessary, answering telephone calls, making appointments, showing real estate for his employer and assisting generally in consummating sales of real estate under the direction of appellant. True, he was compensated only by commissions on sales of real estate, but that did not constitute him a real estate broker or render a contract made between him and his employer for such services void unless in writing and in compliance with the statute of frauds relating thereto. Appellant himself so treated the arrangement, and made compensation to Brown on that basis for years.

Appellant was the broker (the principal), and Brown a mere sub-agent and employee.

For these reasons, in my opinion, the judgment of the trial court should be affirmed.

I therefore dissent.