Argued March 24; reversed April 20, 1937

# CLARK *v.* OPP ET UX.

(66 P. (2d) 1179)

*George W. Caldwell*, of Portland (F. J. Newman, of Medford, on the brief), for appellant.

*W. M. McAllister*, of Medford (G. M. Roberts, of Medford, on the brief), for respondent.

KELLY, J. Action upon an alleged oral contract to recover commissions upon royalties received by lessor from lessee of mining property. From a judgment in favor of plaintiff against defendant, Rose Opp, said defendant appeals.

■ It is urged in respondent's brief that this appeal should be dismissed and the judgment of the lower court affirmed for the reason that no bill of exceptions was filed within the time prescribed by law.

Before issue was joined on appeal, that question was presented on motion and counter-motion; and, on October 6, 1936, an order was made allowing appealing defendant 20 days therefrom within which to file a properly certified bill of exceptions. Such a bill of exceptions was filed on October 23, 1936. We think that we would not be warranted in annulling said order of October 6, 1936, or in holding that a compliance therewith served no purpose.

The contract, upon which this action is based, was negotiated and consummated by plaintiff and defend-

ant, John W. Opp. When the contract was made and also when plaintiff performed the services thereunder, Mrs. Opp was living in Portland practicing her profession as a graduate nurse. Mr. Opp was at the mine, which is westerly from Jacksonville, in Jackson county, Oregon.

One question presented is, whether the contract sued on is that of a real estate broker.

Appealing defendant also urges that plaintiff has not shown performance on his part of the alleged contract.

Another question is, whether there is testimony to the effect that John W. Opp was the agent of Rose Opp, authorized to enter into the contract in suit for and on her behalf.

The propriety of the court's instructions upon the subjects of agency and ratification is also challenged.

In paragraph IV of his complaint, plaintiff alleges:

"That on or about the 1st day of May, 1931, it was agreed by and between the plaintiff and the defendants that if the plaintiff would go upon said mining property, tunnel, timber and develop the said property and expose and sample the ore bodies thereon so that the same could be advantageously exhibited to one John M. Price, a prospective lessee, and would show said property to said prospective lessee, the defendants would pay unto the plaintiff ten per cent of any and all royalties which they might receive from any lease of said premises made by the defendant with said John M. Price, until the sum of $10,000.00 had been paid plaintiff."

Before the cause was submitted to the jury, a judgment of voluntary nonsuit was entered as to defendant John W. Opp.

■ The questions as to the terms of the contract and as to plaintiff's performance thereof were submitted to the jury under appropriate instructions. There being testimony tending to support plaintiff's allegations, with respect thereto, the course thus taken did not constitute error.

■ The distinction between a contract for the services of a real estate broker or agent and the contract alleged in plaintiff's complaint, as hereinabove set out, is recognized in the following cases: *Bates v. Oregon-American Lumber Company*, 285 Fed. 666; *Hall v. Rankin*, 22 Ariz. 13 (193 P. 756); *Wilson v. Morton*, 85 Cal. 598 (24 P. 784); *Sherman v. Clear View Orchard Co.*, 74 Or. 240 (145 P. 264).

■ It is urgently insisted by appealing defendant that there is no substantial testimony tending to support plaintiff's allegation that defendant, John W. Opp, was the agent of defendant, Rose Opp, authorized to enter into said contract for and on behalf of said Rose Opp.

Mrs. Opp testified that John W. Opp, who is her husband, was, and for many years had been, in possession of said mining property as caretaker thereof; and that he was authorized to permit individual prospectors to do prospecting work thereon. There is evidence in the record of negotiations by John W. Opp with other parties on behalf of Mrs. Opp concerning the leasing of said mining property, which later were approved by Mrs. Opp, which approval was evidenced by Mrs. Opp signing leases prepared at the instance of Mr. Opp.

The contract with Mr. Price, by the terms of which the royalties in suit were paid to defendant, was negotiated by Mr. Opp as the agent of Mrs. Opp.

On the 28th day of March, 1929, defendant Rose Opp executed a lease for a term of two years to a part of the mining property in suit, wherein Richard Olson and James Anderson were the lessees, in which lease Mrs. Opp referred to her husband John Opp as her agent reserving to him, as well as to herself and her other agents and employees, the rights of ingress and egress at all times over all portions of said property, the right to be present at any and all cleanups on said property, the right to have duplicate mint or smelter receipts showing the returns on all concentrates or ores shipped for treatment, and to have a record of the complete output of such mining operations. This lease is known to the record as defendant's exhibit E. By its terms, it became effective April 2, 1929, and expired April 1, 1931, which it will be noted was but one month prior to the date of the contract in suit.

In considering the record just recited upon the relationship of Mr. Opp to his wife with respect to his alleged agency, we cannot say that all reasonable minds would agree that Mr. Opp was not authorized to enter into the contract in suit for and on behalf of Mrs. Opp. In other words, we think that there is substantial evidence tending to prove that Mr. Opp had such authority.

For the foregoing reasons we think that no error was committed by the learned and experienced trial judge in overruling defendant's motions for nonsuit and directed verdict.

The court's instructions numbered 42 and 51 are challenged by defendant. Instruction numbered 42 is as follows:

"You are further instructed that the plaintiff proceeds upon the theory that Mr. Opp was the duly au-

thorized agent of Mrs. Opp, and having entered into the contract with Clark in her behalf, Mrs. Opp would be just as much bound as if she had personally entered into it, and I instruct you further that the plaintiff has introduced evidence for the purpose of showing that on several occasions prior to the consummation of this alleged contract upon which the plaintiff sues that Opp negotiated for leases and sales of the property and that the deals were all made by Opp and that Mrs. Opp subsequently signed the written instrument of lease, deed or conveyance, and both Mr. and Mrs. Opp admit that during all of this time Mrs. Opp was residing in Portland—all or part of the time as the case may be—you will remember the evidence—where she was engaged as a nurse practicing her profession, and that Mr. Opp resided in this vicinity and looked after the property, and Mrs. Opp admits that he on various occasions had entered into contracts with prospectors who had worked on the property. I instruct you that agency can be proven by evidence of facts and circumstances, as well as by proving direct authority in writing or otherwise upon the part of the principal, and that a principal may be bound upon a contract made by a person who purports to act as his or her agent, if the principal has heretofore either actually held out that person as his or her agent or has acquiesced in contracts or negotiations executed for and in her behalf by such agent as her agent, and if you believe by a preponderance of the evidence adduced herein that Mrs. Opp either held out to the public or to Mr. Clark that Mr. Opp was her agent or acquiesced in contracts which had been negotiated by him heretofore either with Mr. Clark or the public, then I instruct you that she would be liable for whatever contract Mr. Opp entered into with Mr. Clark in connection with this property.

''However, that instruction I have just given you will be modified and qualified and limited somewhat by further instructions that I will give you and must be considered in connection with what I will hereafter say in regard to this matter of agency.''

Instruction numbered 51 is as follows:

"Now I believe there is one more request that has been made here in regard to this.

"You are instructed that a principal can not acquiesce in and receive the benefit of his or her agent's acts while such agent was acting under apparent authority concerning matters pertaining to his principal's business, and at the same time be relieved of the burdens thereof, whether the transaction concerns the sale or lease of real estate or other business. In other words, I instruct you that should you be satisfied by a preponderance of the evidence that John W. Opp at the time this alleged contract with Mr. Clark was entered into, and at all times thereafter during the period that it is claimed performance thereof was had, and at the time the negotiations for and the lease of the Opp mine to Mr. Price was entered into, and at the time that this instrument, plaintiff's exhibit 2, which is the memorandum of November 5, 1931, was executed by John W. Opp and Clark, was acting as the agent of Mrs. Opp and prior thereto had been held out by Mrs. Opp as her agent, according to the instructions which I have already given you, that Mrs. Opp could not receive the benefits of this lease, namely, the royalties paid thereunder, which it is admitted she has, and at the same time repudiate any liability upon the contract with Clark as made by Opp, if you find such a contract was so entered into, and she would be responsible and liable thereon to the extent of the amount of moneys which the contract calls for and which at this time it is admitted there would be due to Mr. Clark, if his contract is enforcable, the sum of $451.46."

■■ The vice of the first of these two instructions lies in its failure to distinguish between authority to negotiate for a lease and authority to enter into such a contract as the one in suit. It does not necessarily follow as a matter of law that when an owner of property authorizes another person to procure a lessee of such property, such other person is thereby authorized to

secure the services of a third person to that end and enter into a contract binding upon the owner to pay such third person a commission upon the rentals for his services: *Brutinel v. Nygren*, 17 Ariz. 491 (154 P. 1042, L. R. A. 1918F, 713); *Carroll v. Tucker*, 2 Misc. Rep. (N. Y.) 397 (21 N. Y. Sup. 952); *Williams v. Moore*, 24 Tex. Civ. App. 402 (58 S. W. 953); *Sims v. St. John*, 105 Ark. 680 (152 S. W. 284, 43 L. R. A. (N. S.) 796); *Skelly Oil Co. v. Pruitt & McCrory*, 94 Okla. 232 (221 P. 709).

■ The vice of the second of these instructions consists in adopting the former instruction upon the question of an effective contract of agency and unqualifiedly and unrestrictedly applying the principle of ratification by receipt of benefits.

Prior to the institution of this action Mrs. Opp received $3,286.25 and subsequently thereto the sum of $2,348.34, as royalties upon the lease in suit.

Instruction 51 therefore told the jury, in effect, that by receiving these royalties Mrs. Opp ratified the course taken by Mr. Opp in contracting with plaintiff.

■ As to the receipts before this action was begun, we find nothing in the record as to the effect that Mrs. Opp knew or had notice of plaintiff's contract or services at the time she received those royalties. To constitute ratification, there must be knowledge of the contract ratified, Vol. II Mechem on Agency (2d Ed.) Section 438.

■ As to the royalties received subsequent to the institution of the action, retention of benefits after knowledge of the facts does not amount to a ratification, if, at the time such knowledge is acquired, conditions are such, without fault of the principal, that he cannot be placed in *statu quo* or repudiate the en-

tire transaction without loss: *Prichard v. Dur*, 131 Okla. 16 (267 P. 477), (quoting *Winklebach v. Nat. Exchange Bank of Springfield*, 155 Mo. App. 1 (136 S. W. 712)); *Swayne v. Union Mutual Life Ins. Co.*, (Tex. Civ. App.) 49 S. W. 518); *Robinson & Co. v. Nipp*, 20 Ind. App. 156 (50 N. E. 408). On subject of liability of principal to sub-agent see sections 1701 and 1702, Vol. I, Mechem on Agency (2d Ed.) pp. 1289, 1290, and section 458, Vol. 2, Restatement of the Law, Law Inst. p. 1078.

■ A written memorandum was prepared purporting to state the terms of the contract in suit. Mr. and Mrs. Opp testified that sometime after January 10, 1932, Mrs. Opp found this written memorandum of agreement made by Mr. Opp and plaintiff in Mr. Opp's desk. Mrs. Opp testified to the effect that it was then that she received the first notice of plaintiff's alleged contract. Mr. Opp testified that he wanted to know if she would sign it and that Mrs. Opp said: "I won't sign that." Mr. Opp further testified that at that time he spoke to plaintiff and told plaintiff that Mrs. Opp refused to sign the contract.

"No ratification of an unauthorized act in the employment of third persons may be imputed where the purported principal on learning of such employment repudiates the same." 2 C. J. S. 1125; note citing Robert Hayne Tarrant Inc., v. Max Barnett Furniture Co. 134 So. 910, 17 La. App. 156: Winter v. Morgan & Williams, (Tex. Civ. App.) 256 S. W. 342.

■ We think that the instructions upon the subject of ratification should have taken cognizance of these qualifications and restrictions of the general rule announced by the trial court.

This cause is reversed and remanded for such further proceedings as are not inconsistent herewith.

BEAN, C. J., and BELT and ROSSMAN, JJ., concur.