KRAMER, RESPONDENT, *v.* SCHMIDT, APPELLANT.

(No. 4,639.)

(Submitted February 1, 1922.   Decided March 27, 1922.)

[206 Pac. 620.]

*Real Property — Option Contracts — Definition — Statute of Frauds—Indebtedness—Presumptions.*

Option Contracts—Real Property—Nature of Contract.
  1.   An option to purchase land is a contract by which the owner agrees that the prospective buyer shall have the right to purchase his property at a fixed price within a time certain, and under it the latter acquires no more than a personal privilege to purchase which does not ripen into an interest in the land until he chooses to exercise the privilege and complies with the terms upon which he obtained it.
Same—Option Holder Acquires No Interest in Land—Statute of Frauds.
  2.   Since the person to whom an option to buy land is granted acquires no interest in the property itself until he exercises the privilege granted, a contract between the plaintiff and defendant under which the former was to secure the assignment of an option from the holder thereof to defendant did not amount to an employment of plaintiff as a broker or agent to buy land or an interest in land which under subdivision 6, section 7519, Revised Codes of 1921, is required to be in writing, but was one to perform a service which could lawfully be made by parol.
Indebtedness—Creditor Borrowing from Alleged Debtor—Presumption.
  3.   Where one, claiming that another is indebted to him, executes a note to his debtor for money borrowed from him, the rebuttable presumption arises that the lender is not indebted to the borrower.

---

  1.   Nature of interest of vendor or vendee in optional contract for sale of land, see notes in 57 L. R. A. 651; L. R. A. 1916F, 358.

*Appeals from District Court, Fergus County, in the Tenth Judicial District; John A. Matthews, Judge of the Fourteenth District, presiding.*

ACTION by Emil Kramer against A. J. Schmidt. Judgment for plaintiff. Defendant appeals from the judgment and an order denying his motion for a new trial. Reversed.

*Mr. John A. Coleman,* for Appellant, submitted a brief and argued the cause orally.

The following cases hold an agreement of the nature of the one here involved, to be invalid unless there was a note or memorandum thereof signed by the party to be charged: *King* v. *Benson,* 22 Mont. 257, 56 Pac. 280; *Flinner* v. *McVay,* 37 Mont. 306, 15 Ann. Cas. 1175, 19 L. R. A. (n. s.) 879, 96 Pac. 340; *Blankenship* v. *Decker,* 34 Mont. 292, 85 Pac. 1035; *Marshall* v. *Trerise,* 33 Mont. 28, 81 Pac. 400; *McCarthy* v. *Loupe,* 62 Cal. 299; *Kleinsorge & Heilbron* v. *Liness,* 17 Cal. App. 534, 120 Pac. 444.

*Mr. Rufus Hopkins* and *Mr. E. K. Cheadle,* for Respondent, submitted a brief; *Mr. Cheadle* argued the cause orally.

The option contract did not vest the optionee with any interest or estate in the land. It merely gave him the right to acquire an interest by paying a stipulated price within a certain time. (*Stevens* v. *McChrystal,* 150 Fed. 85, 80 C. C. A. 39; *Clarno* v. *Grayson,* 30 Or. 111, 46 Pac. 426, 430; *Woodall* v. *Bruen,* 76 W. Va. 193, 85 S. E. 170; *Cameron* v. *Shumway,* 149 Mich. 634, 113 N. W. 287; *Womack* v. *Coleman,* 92 Minn. 328, 100 N. W. 9; *Dunaway* v. *Day,* 163 Mo. 415, 63 S. W. 731; *National Oil etc. Co.* v. *Teel,* 95 Tex. 586, 68 S. W. 979, affirming 67 S. W. 545; *Rease* v. *Kittle,* 56 W. Va. 269, 49 S. E. 150; *Nelson* v. *Stephens,* 107 Wis. 136, 82 N. W. 163; *Newton* v. *Newton,* 11 R. I. 390, 23 Am. Rep. 476; *Olds* v. *Little Horse Creek Cattle Co.,* 22 Wyo. 336, Ann. Cas. 1917C, 120, 140 Pac. 1004; *Rampton*

v. *Dobson,* 156 Iowa, 315, 136 N. W. 682; *Sprague* v. *Schotte,* 48 Or. 609, 87 Pac. 1046; *Little* v. *Cardwell* (Ky.), 122 S. W. 799.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for breach of a contract. It is alleged that in January, 1917, one Julius Bain was the owner of a tract of land situated in the counties of Fergus and Chouteau consisting of 3,600 acres; that he (Bain) had executed and delivered to one James Awberry an option contract for the sale to him of the land at the price of $20 per acre; that on or about February 15, 1917, the defendant agreed with the plaintiff that if plaintiff would procure the assignment of the option contract to defendant by Awberry so that he could have the right to purchase the land at the price named therein, he would pay the plaintiff a commission of one dollar per acre, or five per cent of the entire purchase price named in the option contract; that plaintiff, pursuant to the agreement, induced Awberry to assign the option contract to defendant; that subsequently the defendant purchased all the land from Bain at the price of $20 per acre; and that the plaintiff became entitled to demand of the defendant, and did demand of him, the payment of $3,600, which he refused.

The defendant admitted that the land was owned by Bain and that defendant purchased it during the year 1917 at the price of $20 per acre, amounting to the total sum of $72,000, but denied all the other allegations of the complaint. As a special defense he alleged that the agreement under which the defendant was sought to be charged, was one of employment of an agent or broker to purchase real estate upon a commission; that it was not embodied in writing, and that it was therefore void under subdivision 6 of section 5017 of the Revised Codes of 1907 (sec. 7519, Rev. Codes 1921). As a second special defense he alleged that during the year 1916–17 the plaintiff and defendant had various business

transactions; that on or about June 8, 1917, there was a settlement between them of all these transactions, by which it was found that the plaintiff was indebted to the defendant in a balance of $25; and that he thereupon executed to the defendant his promissory note for that sum due thirty days after date.

Plaintiff by reply tendered issue upon all the allegations of the first and second special defenses, except that he admitted that a settlement did take place between the plaintiff and defendant as alleged in the answer, and alleged that it was not connected in any way with the transaction out of which this action arose. Upon the issues thus framed the cause was submitted to the court without a jury. It found the facts as alleged in the complaint and rendered judgment in favor of the plaintiff. Defendant has appealed from the judgment and an order denying his motion for a new trial. Counsel has made several assignments of error in his brief, but all of them present the one question, namely: Was the evidence sufficient to justify the findings?

Counsel insists that since it appears from the evidence that [1] the agreement by which plaintiff was employed by defendant was not embodied in a writing signed by the latter, it came within the provisions of the statute of frauds and was invalid. This contention proceeds upon the assumption that the plaintiff was employed as a broker or agent to purchase real estate upon a commission. The evidence does not justify this assumption. It discloses that the contract gave to Awberry a mere option to purchase the land within a specified time. Counsel falls into error in failing to distinguish between a contract of purchase and sale, and one granting a mere option to buy. In the early case of *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695, Mr. Justice De Witt defined an option as follows: "An option  *  *  *  is neither a sale, nor an agreement to sell. It is simply a contract, by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall

[62 Mont. 568.]

have the right to buy his property, at a fixed price, within a time certain. He does not sell his land; he does not then agree to sell it; but he does then sell something, *viz.,* the right or privilege to buy at the election, or option, of the other party. The second party gets *in praesenti,* not lands, or an agreement that he shall have lands, but he does get something of value, that is, the right to call for and receive lands if he elects. The owner parts with his right to sell his lands (except to the second party) for a limited period. The second party receives this right, or, rather, from his point of view, he receives the right to elect to buy.'' Under this definition the holder of the option is not vested with any interest in the land, but, as said by Mr. Justice De Witt, he gets *"in praesenti* not lands or an agreement that he shall have lands, but he does get something of value, that is, the right to call for and receive lands if he so elects.'' The doctrine announced in this case has been approved by this court in later cases. (*Snider* v. *Yarbrough,* 43 Mont. 203, 115 Pac. 411; *Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136; *Tyler* v. *Tyler,* 50 Mont. 65, 144 Pac. 1090.) The holder [2] of the option, then, acquires nothing but a personal privilege to purchase, which does not ripen into an interest in the land until he chooses to exercise the privilege conferred by the option and complies with the terms upon which he obtained it. So it is held by the authorities generally, from a number of which found in the brief of counsel for plaintiff we cite the following: James on Option Contract, sec. 502; *Richardson* v. *Hardwick,* 106 U. S. 252, 27 L. Ed. 145, 1 Sup. Ct. Rep. 213; *Benedict* v. *Pincus,* 191 N. Y. 377, 84 N. E. 284; *Thacher* v. *Weston,* 197 Mass. 143, 83 N. E. 360; *Patterson* v. *Farmington St. Ry. Co.,* 76 Conn. 628, 57 Atl. 853; *Verstine* v. *Yeaney,* 210 Pa. 199, 59 Atl. 689.

Awberry having acquired no interest in the land, but a mere personal privilege which he could lawfully assign to the defendant (*Winslow* v. *Dundom, supra*), the agreement between the plaintiff and the defendant did not amount to an

[62 Mont. 568.]

employment of the former as a broker or agent to buy land or an interest in land which by the statute is required to be in writing, but to an engagement by him to perform a service which could be lawfully made by oral contract.

Counsel contends further, that the evidence taken as a whole was insufficient to justify the finding that the agreement was made as alleged, particularly so in view of the settlement made between plaintiff and defendant on June 8, 1917, after plaintiff's services had been rendered. There was a direct conflict in the testimony of plaintiff and defendant as to the making of the agreement as well as to the procurement of the assignment by plaintiff. There was no controversy but that the option was obtained from Bain by Awberry about January 20, 1917, and that the latter assigned it to the defendant on or about March 15, 1917. The plaintiff testified that after he was employed by defendant to procure the assignment from Awberry, he found Awberry and took him to the defendant and thus brought about negotiations between them which resulted in the making of the assignment. The defendant testified in substance that though the plaintiff brought Awberry to his office and introduced him, the mission of Awberry was to secure a loan through the defendant who was engaged in a farm loan business in order to enable him to take up the option; that during the negotiations which resulted in the assignment, the plaintiff was present but had nothing further to do with the matter and that nothing was said between plaintiff and defendant about the option. Leaving out of consideration the settlement of June 8, the evidence would sustain a finding that the agreement was made [3] as alleged by the plaintiff.

With respect to the settlement the defendant testified that during April and May, he had loaned plaintiff different sums of money which he agreed to repay in a few days; that these sums aggregated about $250; that plaintiff made payments from time to time; that at the time of the settlement, plaintiff not having money enough to discharge his indebtedness in full, defendant

asked him for his promissory note due in thirty days to cover a balance of $25 and that plaintiff thereupon executed and delivered it to him. He testified further that when the settlement was effected, the following took place: "Why, Mr. Kramer told me, he says, 'We are now square.' He says, 'You don't owe me nothing and I don't owe you anything.' 'Well,' I says, 'of course you owe me this $25 note; of course that is not due now.' I says, 'That is due in the future,' 'But,' he says, 'we are all square, ain't we?' 'Yes,' I says, 'we are.' He had no claims against me and asked me whether I had any more against him and I told him I didn't. * * * Why, I had been bothering him a little about that money that I had loaned him during the month of April and May and he didn't like to settle it up so very well but I told him, I says, 'You agreed to get this money back to me in a few days,' and I told him I needed it. Yes, he did some work for me in my real estate business at times."

The plaintiff was not present at the trial. His evidence was given by deposition. Being asked by his counsel what he had to say as to whether there was a full settlement of business between him and the defendant at that time, replied: "No, not on that deal. Yes, I executed a promissory note to him at that time. No, sir; that was not in settlement of this option contract business. The option contract business has never been settled between me and Schmidt." The foregoing is all the evidence on this point.

In considering a case in which one of the defendants had executed promissory notes to plaintiff when, as he afterward claimed in an action by the plaintiff to collect the balance due on the notes, that the plaintiff was indebted to him at the time the notes were executed, this court said: "The notes upon which the plaintiff seeks recovery were executed nearly a year afterward. The presumption obtains that defendants would not have executed these notes while the plaintiff was indebted to R. E. Hamilton in such a substantial sum

as is represented by the items included in this counterclaim. This presumption is a rebuttable one, but it cast the burden upon the defendants, and we do not find any evidence in the record which tends in any measure to rebut it." (*J. I. Case etc. Machine Co.* v. *Hamilton,* 55 Mont. 276, 176 Pac. 152.)

In a later case in which the circumstances were somewhat similar, it was said: "It is contrary to the experience and observation of mankind that one to whom another is indebted will borrow money from his debtor upon a promise to repay him and at the same time make no mention of a debt claimed to be due from the debtor. The presumption arising from such a transaction is that the lender is not indebted to the borrower." (*Crawford* v. *Pierse,* 56 Mont. 371, 185 Pac. 315.)

Considering the facts as detailed by the defendant which the plaintiff did not controvert except by the bare statement quoted above, we do not think that plaintiff's explanation was sufficient to overcome the presumption raised against him by his conduct. We are of the opinion that the evidence taken as a whole, viewing it in the light most favorable to the plaintiff, was not sufficient to sustain the court's findings.

Upon the assumption that the contract had been made as alleged in the complaint, the plaintiff had earned his commission as soon as the assignment had been completed. Therefore, when the settlement was made, defendant was indebted to plaintiff for $3,600, the amount stipulated for in the contract.

The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE GALEN and HONORABLE H. H. EWING, sitting in place of MR. JUSTICE REYNOLDS, disqualified, concur.

MR. JUSTICE COOPER and MR. JUSTICE HOLLOWAY dissent.

Rehearing denied June 5, 1922.