**EAST v. GARCIA et al.   (No. 7770.)**

Court of Civil Appeals of Texas. San Antonio.
April 27, 1927.

Rehearing Denied May 25, 1927.

1. **Frauds, statute of** ⬤⟳142—**Ambiguous contract granting right to lease land for oil cannot be reformed to supply deficiency by parol.**

Though parol testimony may be offered to explain terms of ambiguous contract granting right to lease land for oil, gas, and other minerals, equitable action cannot be maintained for reformation to supply deficiency by parol, since such contract is within statute of frauds and equity will not contravene law.

2. **Frauds, statute of** ⬤⟳56(6)—**Option to lease land for oil must be written and must contain all essential terms of proposed lease.**

Option to lease land for oil, gas, and other minerals to be enforceable must be in writing and must contain all of essential terms of proposed oil and gas lease expressed with such certainty that it may be understood without recourse to parol evidence.

Appeal from District Court, Brooks County; Hood Boone, Judge.

Action by Ed. H. East against Jose Garcia and others, in which defendants filed a cross-action. Judgment for defendants, and plaintiff appeals. Affirmed.

J. W. Wilson, of Falfurrias, and Neal A. Brown, of Edinburg, for appellant.

Hicks, Hicks, Dickson & Bobbitt and Edward H. Lange, all of San Antonio, for appellees.

COBBS, J. Appellant, Ed. H. East, sued the appellees, Jose Garcia, Justo Garcia, Casimiro Garcia, and Jose Viscaya Prado, in the district court of Brooks county, Tex., to re-

cover $19,370 damages for the alleged breach of a contract made between the parties and for $200 paid defendants by plaintiff at the time of entering into said alleged contract. The case was called for trial on plaintiff's second amended original petition, which alleged that the part of the contract, reduced to writing, read as follows:

"This contract and agreement made and entered into by and between Casimiro Garcia, Jose Garcia, Justo Garcia, Jose Viscaya, all of Brooks county, Texas, hereinafter called first party, and Ed. H. East, of Hidalgo county, hereinafter called second party, witnesseth: That for and in consideration of $200.00 cash in hand paid by second party to first party, receipt of which is hereby acknowledged and confessed:

"1. First party hereby grants to second party the exclusive right to lease for oil and gas and all other minerals two certain tracts of land being situated in Brooks county, Texas, which are better known as the 'El Salada' Ranch, comprising 2767 acres, more or less and being a part of the 'La Mestena' Raphael Garcia original grantee, and the 'Rancho Nueva' Ranch comprising 1107 acres, more or less, and being a part of the 'La Mestena' Raphael Garcia Salinas, original grantee.

"2. It is expressly agreed and understood that this contract shall remain in full force and effect until July 16th, 1926, during which time second party will have the privilege of inspecting said lands and title to same.

"3. It is mutually agreed and understood that first party will receive $5.00 per acre for each and every acre, and the lease will be a 5-year paid up lease at the rate of $1.00 per acre per annum.

"4. First party agrees to furnish an abstract of title brought down to the date of lease, showing a good and merchantable fee simple to be vested in them, and further agrees that upon payment of $1,000.00 by second party on July 15th, 1926, that this agreement will be extended for another 30 days, provided that the privileges granted in paragraph one are not sufficient to complete the careful inspection of title.

"Witness our hands in duplicate this the 24th day of June, 1926, A. D.

"[Signed]    Jose Garcia,
"Justo Garcia,
"Casimiro Garcia,
"Jose Viscaya Prado.
"First Party.
"Ed. H. East.
"Second Party."

Plaintiff further alleged that by mutual mistake of the parties a part of the contract was not reduced to writing, but was in substance as follows:

"That the lease was to be a five-year lease and as long thereafter as oil and gas was produced in paying quantities; that the form of the lease should be similar to what is known as Producers' 88 Special, Texas Standard, excepting as modified by their mutual agreement as alleged, same being the usual form of lease used in Brooks and surrounding counties; that defendants were to receive one-eighth of all oil and gas produced from said land; that the lease was to be a paid-up lease for the length of its term."

Plaintiff further alleges that he tendered defendants within the time specified $1,000 for the 30-day extension of his option to lease as provided by said agreement, which was refused by defendants; that defendants declined to execute their agreement with him. Plaintiff alleged that the word "one" in the phrase, "granted in paragraph one," used in the fourth clause of the written part of the agreement, should read that, "provided that the privileges granted in paragraph two are not sufficient to complete the careful inspection of title," the word "two" being the word intended to be used by the parties, as shown by the context, and that the word "one" was written into that part of the agreement reduced to writing instead of the word "two" by mutual mistake of the parties; that at the date of said agreement the lease was worth $5 per acre, but on or about July 13, 1926, and up to date of filing second amended original petition, said lease was worth $10 per acre; and that he had a bona fide offer for same from the agent of the Humble Oil Company of $10 per acre; that he was prevented from selling the lease to said company by defendants' alleged breach of contract; that otherwise he could and would have sold said lease to said company; that he had been damaged thereby in the sum of $19,370.

The defendants answered, pleading: (a) General and special exceptions; (b) general denial; (c) by filing a cross-bill against plaintiff declaring plaintiff's alleged agreement with defendants created a cloud upon their title, and praying that said contract be canceled and the cloud removed.

The court sustained defendants' general demurrer and special exception and dismissed plaintiff's suit.

The court proceeded to trial under defendants' cross-action, admitted defendants' testimony, excluded plaintiff's, and entered judgment canceling the agreement and removing cloud from title, to which action of the court plaintiff then and there in open court excepted and gave notice of appeal to the Court of Civil Appeals for the Fourth Supreme Judicial District of Texas.

Appellant's first four assignments and propositions challenge the ruling of the court in dismissing plaintiff's petition, which seeks damages for the breach of a contract wherein its terms are not in writing and is for longer term than one year; and, second, because the court erred in sustaining exceptions to the petition to that part wherein plaintiff alleged mutual mistake in leaving out of the written contract the alleged parts of the agreement out of which the controversy turned, not reduced to writing, that it was for a longer term than one year. The contract sued on alleged a contract to enter into a lease within less than a year, the terms being partly stipulated and partly omitted by mutual mistake; plaintiff having declared upon an agree-

ment entered into the 24th of June, 1926, to be performed at any time up until July 16, 1926, providing for an extension of 30 days by plaintiff paying to defendants $1,000 on July 15, 1926, and that part not reduced to writing was a mutual mistake.

The several propositions are merged in one for the ease of discussing the same, as they are akin and controlled by the same principle. No profit will result from any discussion of the statute of frauds, so well known and understood. The statute of frauds requires such contracts to be in writing. Under the original contract, for the consideration of $200 appellant was granted the "exclusive right to lease for oil and gas and all other minerals * * * the 'El Salada' Ranch, comprising 2767 acres * * * and the 'Rancho Nueva' Ranch, comprising 1107 acres." The contract to "remain in full force and effect until July 16th, 1926, during which time second party will have the privilege of inspecting said lands and title to same." And it was in the contract "mutually agreed and understood that first party will receive $5.00 per acre for each and every acre and the lease will be a 5-year paid up lease at the rate of $1.00 per acre per annum." The first party agreed to furnish an abstract of title brought down to date of lease, showing a good merchantable title, etc., and agreed that "upon payment of $1,000.00 by second party on July 15, 1926, that this agreement will be extended for another 30 days, provided that the privileges granted in pargraph 1 are not sufficient to complete the careful inspection of title." Obviously the contract is indefinite and ambiguous.

[1] If only ambiguous parol testimony could be offered to explain its terms—but that is not what appellant is attempting to do. His attempt is to reform the contract by adding to it, on the ground of mutual mistake, other more comprehensive terms of an oil lease, such as that the "lease was to be a 5-year lease running from the date plaintiff exercised his option to buy same and as long thereafter as oil and gas was produced in paying quantities; that defendants were to receive one-eighth of all oil and gas produced from said land; that the lease was to be a paid-up lease for the length of its term; that the form of the lease was to be similar to what is known as Producers' 88 Special, Texas Standard"—claiming the foregoing agreement was made at the same time the lease was made, but left out by mutual mistake.

Appellant seems to rely upon the case of Simpson v. Green (Tex. Com. App.) 231 S. W. 375, to support his contention, and the appellees on Cantrell v. Garrard (Tex. Com. App.) 240 S. W. 533. Of course these are not the only cases cited and relied upon by them. Both or these opinions are written by the same learned justice.

The distinction running through the authorities is that if the instrument itself affords sufficient terms to show by a memorandum in writing the material terms of the contract, it may be enforced. Parol evidence may then be offered. The original contract was lacking in every element necessary to admit of the oral proof. We understand that a contract may be reformed so as to enforce it and prove the terms left out by mistake, but under the doctrine of reformation a new and entirely different contract may not be set out and proven under the doctrine of mutual mistake, the proof of which rests on parol, the effect of which would be to defeat the statute of frauds. Appellant himself alleged it "to be a 5-year lease running from the date plaintiff exercised his option to buy the same and as long thereafter as oil and gas was produced in paying quantities" etc., without giving any of the terms to come under his views of an oil lease such as he claims was agreed upon, not written in the contract.

[2] The contract, as it was written, was a mutual, binding contract, so far as it went, but the oral contract may not be mutual in so far as appellees are concerned, for the important elements were admittedly left out of the original, and with them it constituted no valid contract. It was no more than an agreement to extend the lease as an option for 5 years, but it left out all terms it should have contained. An option to lease land for oil, gas, and other minerals to be enforceable must be in writing and must contain all of the essential terms of the proposed oil and gas lease expressed with such certainty that it may be understood without recourse to parol evidence to show the intention of the parties; and where a purported option to lease land for oil, gas, and other minerals fails to state the term for which the lease was to run, the time for the beginning of drilling operations, the amount of royalty to be paid for oil, the amount of royalty to be paid for gas, and other essential provisions, the holder of such option cannot maintain an equitable action for reformation to supply by parol the deficiencies of the alleged option, as such option is within the statute of frauds and equity will not contravene the law.

We find no case and none is cited where equitable relief is granted through the reformation of an executory contract, where the statute of frauds has been properly pleaded, to add terms by oral testimony, claimed to be left out by mutual mistake.

It is said in Allen v. Kitchen, 16 Idaho, 133, 100 P. 1052, L. R. A. 1917A, 563, 18 Ann. Cas. 914:

"There is no contention made here that the contract in any way speaks untruthfully. The complaint is that it does not speak the whole truth. This is the very thing the statute of frauds is enacted to guard against. It requires the contract to be in writing, and prohibits oral evidence to establish a contract of this kind. There is no contract until it is reduced to writ-

ing as provided by law. It is not a question as to what the contract was intended to be, but, rather, was it consummated by being reduced to writing as prescribed by the statute of frauds. Admittedly, an essential portion of the contract in this case was not reduced to writing and subscribed by the party to be bound. This case, therefore, presents the question of adding to and supplying an insufficient description, rather than that of reforming an untruthful description. If a court of equity can supply one requirement of a contract that is required by the statute of frauds to be in writing, it may supply another, and the logical conclusion would be that it might in the end supply all the requirements and thereby contravene a positive statute. This cannot be done."

Also see Johnson v. Granger, 51 Tex. 42.

We do not think the contract or option, or whatever it be called, was a sufficient memorandum upon which to reform so as to let in the oral testimony to create a valid contract.

We have examined the assignments of error presented and urged by appellant to appellees' cross-action, and find no error assigned that should cause a reversal of the judgment. Under the pleadings and facts no other judgment could have been entered.

The judgment of the trial court is therefore in all things affirmed.