315 P.2d 273

**Keith L. KNIGHT, d/b/a Knight Realty Company, Plaintiff and Appellant,**

v.

**Ross H. CHAMBERLAIN, Defendant and Respondent.**

No. 8623.

Supreme Court of Utah.

Aug. 28, 1957.

Richards & Bird, Salt Lake City, for appellant.

O. W. Adams, Jr., Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff, Keith L. Knight, a real estate broker, sued Ross H. Chamberlain for services rendered, under an oral contract, in connection with a proposed program for the development of residential properties in Salt Lake County. At the conclusion of plaintiff's evidence the defendant made a motion to dismiss. The trial court granted the motion and entered a written order of dismissal reciting that the evidence showed that, "the plaintiff was employed by the defendant to obtain options * * * to pur-

chase real property * * * and there being no written * * * memorandum evidencing said agreement * * * [it] * * * was void by virtue of the provisions of Section 25–5–4(5)." [1]

The case of Baugh v. Darley,[2] in which a broker was denied recovery for services in a real estate transaction because he had no written contract, is cited as controlling. The plaintiff's position is that neither the statute nor the cited case is applicable to the instant situation and in support thereof urges two separate propositions: (1) That he undertook only to procure "options" which do not amount to "real estate" within the meaning of the statute, and (2) that the services he agreed to and did render were of an investigative and advisory nature, preliminary to and separate from the contemplated purchase of real estate.

Discussion of these contentions requires a factual background. During the fall of 1955 much notoriety was given to the fact that Boeing Aircraft, one of the nation's largest aircraft manufacturers, was contemplating the location of a large plant in Salt Lake County, just outside Salt Lake City. It was reputed that this plant would create about 20,000 new jobs, so that with families and related businesses it would account for about 100,000 population. This inspired considerable activity in real estate in the area. Incident thereto the defendant Chamberlain, a resident of California, informed the plaintiff Knight, a Salt Lake real estate broker, that he desired to develop tracts of land in Salt Lake Valley for residential purposes, as he had done in California. Mr. Knight immediately began working on the project. In connection therewith he took Mr. Chamberlain about Salt Lake Valley by airplane and automobile and unfolded his knowledge of the area about such matters as water, utilities, sewage disposal, highways, schools and other details. Chamberlain requested Knight to line up options in certain localities, which he agreed to do, but no written contract was entered into between them.

Knight thereafter spent considerable time in acquiring data and in contacting various owners in an effort to get them to sign options on forms furnished by Chamberlain. Due to the wording of these contracts and the fact that defendant had furnished no money with which to pay the recited consideration, plaintiff was unable to get any signers. When defendant was informed of this he replied: "Knight, you go back * * * bring me down (to California) some signed options, * * * I will spend $150,000.00 cash and $25,000.00 a year with you." However, he still furnished no mon-

---

1. Sec. 25–5–4(5), U.C.A.1953, makes void contracts, "authorizing or employing an agent or broker to purchase or sell real estate for compensation."

2. 112 Utah 1, 184 P.2d 335.

ey to Knight and there was no further discussion as to an option form which did not require a cash payment.

After this meeting, Knight continued working on the procurement of options, but went to his own attorney, Elias L. Day, who worked out a form which proved more acceptable to prospective sellers, and he succeeded in getting some of them signed. In November, 1955, he flew to Sacramento, California, for a meeting with Chamberlain, who rejected the options as not acceptable, but nevertheless, requested plaintiff to keep at the job and get suitable options on other property.

The Boeing Company did not locate in Salt Lake and the whole project fell through. Knight billed Chamberlain for $3,450 for services; payment was refused; hence this suit.

### Is An Option Real Estate?

The question as to whether an option amounts to an interest in land is one upon which there is disagreement among the authorities. Some adhere to the view that it is merely a personal right in the optionee to call for and receive land if he elects to do so, dealing with which does not require a writing under the statute of frauds;[3] others hold that an interest in land is created and such a contract must be in writing to be enforceable.[4] So far as we are able to learn, the question has not been decided by this court, although in the case of Chournos v. Evona Inv. Co.,[5] in passing upon whether joint optionees had exercised an option, it was recited that the option was a right to call for and receive lands if the optionee so elects. The question was not directly presented in that case and was not determinative of the issue before the court. The statement was thus dicta and of no particular concern as precedent.

In approaching the question: whether an option amounts to an interest in land, the matter of primary concern is the nature of the right an option represents. Once the optionor has, for a good consideration, agreed to and signed an option, he is bound to sell his property if the optionee performs the conditions prerequisite to exercising it. Likewise, if he elects to do so,

3. O'Neill v. Wall, 103 Mont. 388, 62 P.2d 672; Kramer v. Schmidt, 62 Mont. 568, 206 P. 620; Richanbach v. Ruby, 127 Or. 612, 271 P. 600, 61 A.L.R. 1441.

4. Watkins v. Arnold, Tex.Civ.App., 60 S. W.2d 476; Lyons v. Bass, 103 Ga. 573, 34 S.E. 721; Hilberg v. Greer, 172 Mich. 505, 138 N.W. 201; Granger Real Estate Exchange v. Anderson, Tex.Civ.App., 145 S.W. 262; Stewart v. Cadeau, 109 Wash. 292, 186 P. 894; East v. Garcia, Tex. Civ.App., 295 S.W. 239; Neely v. Sheppard, 185 Ga. 771, 196 S.E. 452; Bovo v. Abrahamson, 100 Cal.App. 373, 280 P. 191. See also McGuirk v. Ward, 115 Vt. 221, 55 A.2d 610.

5. 97 Utah 335, 93 P.2d 450.

the optionee can perform, and then enforce his right to purchase and obtain conveyance of the property. Even before the option is exercised, the optionee can assert rights in the property by enjoining its sale to others.[6] The rights and duties of the parties are thus seen to be closely analogous to those of buyers and sellers under conditional sales contracts, where land is to be conveyed upon performance by the buyer; and options have been so referred to.[7]

There is of course a distinction between the optionee and the purchaser under an ordinary real estate contract, in that the optionee need not exercise his option, but can forfeit his payment and not perform; whereas, the vendee under the contract is bound. However, this difference is in no way inconsistent with the idea that an option is essentially a right to purchase. Due to the fact that the optionee does have a degree of control over the property and the right to acquire it by performing certain conditions, logic seems to impel the conclusion that a valid option to purchase is an interest in real estate which would come within the terms of the above quoted portion of the statute of frauds.[8]

### Was There A Contract for Services Separate From Those Involved In A Sale of Real Estate?

Plaintiff cites authorities sustaining his theory that services preliminary to and incidental to sales activities may rest upon contracts entirely distinct from the actual negotiation and sale of property, and which the courts have held not to be void for lack of writing, examples of which are: the employment of one person to bring another on land for inspection purposes,[9] to do mining development work and sample ore bodies;[10] an oral contract between a broker and his agent employing the agent to do sales work which the broker is to do under a written contract;[11] the employment of a sales manager of a real estate company and providing for compensation based on sales;[12] all of which may be said to be directly or indirectly involved in the furtherance of sales activities but are held not to be contracts "engaging an agent to purchase or sell real estate."

We have no particular quarrel with those authorities as they may apply in special fact situations. Undoubtedly one person could employ another, even a real estate agent, to

6. See McFerran v. Heroux, 44 Wash.2d 631, 269 P.2d 815; 1 Corbin on Contracts, § 272, p. 907 (1950); 50 A.L.R. 1315.

7. 2 Corbin on Contracts, § 417, p. 439 (1950).

8. See note 3 supra.

9. Hall v. Rankin, 22 Ariz. 13, 193 P. 756.

10. Clark v. Opp, 156 Or. 197, 66 P.2d 1179.

11. Andersen v. Johnson, 108 Utah 417, 160 P.2d 725, 167 A.L.R. 768.

12. Arbuckle v. Clifford F. Reid, Inc., 118 Cal.App. 272, 4 P.2d 978.

render a service other than "to purchase or sell real estate." Further, it is conceivable that the service may be of such a nature that it would usually be regarded as an integral part of the negotiation of a sale of realty, yet if it were rendered under a contract for services, plainly separate from a sales transaction, it would not be covered by the statute, and recovery might be had for it, without the requirement that the contract be in writing.

Seeking to bring himself within the ambit of that theory, plaintiff emphasizes certain parts of the evidence: During the early discussions of the project, the defendant stated that he would be glad to pay plaintiff for his services, to which the plaintiff replied that there would be no obligation to do so, if the options were exercised. Plaintiff attempts to turn this to his purpose, urging that such negative statement, implies the converse affirmative, that if the options were *not* exercised, there would be an obligation to pay for his services. Other facts which he points to as having a significant bearing on his contention are: that when he returned from the trip to Sacramento he sent Chamberlain the bill for his expenses, which the latter promptly paid; that the amount paid to plaintiff being in excess of the actual expenses, he wrote a letter acknowledging payment and saying: "However, I am crediting this difference to Mr. Chamberlain's account with me for other expenses and services rendered in his employment of my services here in Salt Lake valley"; that Chamberlain neither furnished him with any money, nor endowed him with authority to do anything except to comply with the latter's requests to make investigations and attempt to get options for the latter to consider; that he never in fact approved any options, nor did he go through with the plan so that the plaintiff had any opportunity to be otherwise compensated for his efforts.

If those facets of the evidence, singled out by the plaintiff, were viewed in isolation, they might well be regarded as tending to support his position. But the evidence must be looked upon in its entirety. If so regarded, the evidence upon which plaintiff relies to support his contention of a contract for a service separate from the negotiation of a sale is not necessarily inconsistent with the defendant's theory that their dealings were all part of one over-all transaction designed to culminate in the purchase of property, which was the view taken by the trial court. It is apparent that it regarded the following significant facts as pointing persuasively toward such determination: that Chamberlain's contact with Knight was as a real estate agent whose business was negotiating sales of real estate; that all of the discussions between the parties related to Chamberlain's ultimate objective of acquiring properties, which is further indi-

cated by his concern over options which he persisted in urging Knight to obtain; that Knight busied himself in complying with that request and in fact procured a considerable number of options purposed toward sale of the properties to Chamberlain; that his investigative and advisory activities were but an effort to lay the foundation for some big sales upon which he would realize handsome commissions because the values of the properties in prospect ran into millions of dollars;[13] that this work was nothing more than the usual activities of a real estate agent working upon prospective sales with the expectation that if they materialize, he will get the commissions, but if they fail, they go without reward.

The determination made by the trial court finds support in the case of Pacific Southwest Development Corp. v. Western Pacific R. Co.[14] decided by the Supreme Court of California on facts analogous to those here. The court pointed out that the phrase "to sell and purchase real estate" must reasonably be interpreted to include the performance of activities which aid or assist in the carrying out of the negotiation and the consummation of a sale. It was there held, as we do here, that the procurement of an option to purchase property comes within the provisions of the statute and thus an agreement to perform such services must be in writing to be enforceable.

Affirmed. Costs to respondents.

McDONOUGH, C. J., and WADE, WORTHEN, and HENRIOD, JJ., concur.

---

13. One of the options alone, Exhibit 7, called for a purchase price of $1,850,000.

14. 1956, 47 Cal.2d 62, 301 P.2d 825. See also Hooper v. Mayfield, 114 Cal.App.2d 802, 251 P.2d 330; Duckworth v. Schumacher, 135 Cal.App. 661, 27 P.2d 919.