M. L. GORDON SASH & DOOR
COMPANY, Respondent,

v.

David MORMANN, et al., Defendants,

William D. Janohosky, Appellant.

No. 47750.

Supreme Court of Minnesota.

August 11, 1978.

Meyer, Nelson & Miller, Gary J. Meyer, and Roger N. Eye, Robbinsdale, for appellant.

Fredrikson, Byron, Colburn, Bisbee & Hanson and Michael A. Stern, Minneapolis, for respondent.

Heard before TODD, YETKA and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This is an appeal from an order denying appellant William D. Janohosky's successive motions to enjoin and set aside a sheriff's sale of certain real property owned by Janohosky, which was sold pursuant to writs of execution obtained by respondent M. L. Gordon Sash & Door Co. [Gordon] to satisfy its judgment lien against defendant David Mormann. Janohosky obtained the property from Mormann pursuant to an option agreement. The district court ruled that Janohosky purchased the property subject to Gordon's judgment lien. We reverse and remand.

The property sold at the sheriff's sale was the subject of a series of agreements which ultimately culminated in the option agreement between Janohosky and Mormann. The first of these agreements, dated April 25, 1972, was a purchase agreement between Janohosky and Keyway Builders, Inc., a Minnesota corporation owned by defendants David Mormann and Robert Wiley. The agreement provided that Keyway Builders would convey to Janohosky a lot located at 10700–11th Avenue North in Minneapolis, Minnesota, for a purchase price of $10,000. The same parties entered into a second agreement bearing the same date in which Keyway Builders agreed to construct a double bungalow for an additional sum of $42,000. Payment was to consist of a downpayment of $1,000 for each agreement, with the balance to be paid upon completion of construction.[1] The bungalow was scheduled for completion in July 1972, at which time the closing was to take place. Due to delays in construction, however, Janohosky was unable to take possession until February 1973. Although the record is unclear, Janohosky apparently paid $10,600 during the construction period.

During the construction of the bungalow Gordon delivered to Mormann certain millwork material used in the bungalow occupied by Janohosky. The amount due for the millwork material was $4,573.05. When Mormann failed to pay the amount due Gordon obtained from Mormann a confession of judgment. On August 26, 1974, judgment was entered and docketed pursuant to the confession of judgment. The order for entry of judgment provided that the judgment be entered, inter alia, against Mormann personally and against Mormann's interest in the lot. Due to a clerical error, however, the judgment against Mormann's interest in the lot was not entered and docketed until October 6, 1976.

On May 14, 1974, Janohosky and Mormann entered into a new purchase agreement for the lot upon the discovery that Mormann was the fee owner of the lot. On January 3, 1975, Janohosky and Mormann entered into a third purchase agreement for the lot, this one calling for a closing date of February 1, 1975.

When Janohosky failed to make the payments required by the latest purchase agreement, Mormann initiated a cancellation proceeding against Janohosky. Janohosky then initiated an action seeking specific performance of the purchase agreement and an injunction preventing its cancellation. Janohosky also obtained an order temporarily restraining Mormann's cancellation proceeding pending a hearing on the merits. On June 18, 1975, Mormann and Janohosky reached an accord whereby Mormann gave Janohosky an option to purchase the property and Janohosky dismissed with prejudice his action for specific performance.

The option agreement provided that Janohosky, in order to exercise the option, pay the full purchase price for the property by July 15, 1975. In connection therewith the option agreement reads as follows:

"The purchase price for the property shall be Twelve Thousand Three Hundred

---

1. The agreement for the lot provided for payments of $3,000 at the commencement of construction and $6,000 upon completion. The construction agreement called for payments of $20,500 on "rough-in" and $20,500 upon completion.

Seventy Two and ⁵⁰/₁₀₀ Dollars ($12,372.50) which shall be paid on exercise of this option as follows:

"Earnest money herein paid $1,000.00 and $11,372.50 cash, on the date of closing, which shall be on or before July 15, 1975, which shall be the closing date herein. In the event that the agreement is not closed on or before July 15, 1975, this option agreement shall terminate; Sellers may, in that event, retain their $1,000.00, and buyers will peaceably vacate the premises. It is understood and agreed that the buyers have had a home built on the property in the amount of $42,000.00. The full $54,-372.50 for land and building will be paid by buyers obtaining, at their own expense, an FHA mortgage at 8½ percent interest. Sellers agree to pay points not in excess of 5. It is expressly agreed, notwithstanding any other provisions of this contract, the buyers shall not be obligated to complete the purchase of the property described herein, or to incur any penalty by forfeiture of earnest money deposits or otherwise unless buyers receive a statement issued by the Federal Housing Commissioner setting forth the appraised value of the property for mortgage purposes of not less than $47,-450.00. * * *.

"Subject to performance by the buyers, the sellers agree to execute and deliver a Limited Warranty Deed. That sellers will be responsible for judgments, liens and restrictions up to (but not to exceed) $10,000.00, and that the proceeds of the purchase price up to $10,000.00 will be used to clear up judgments only to that amount. Sellers Limited Warranty Deed may be limited accordingly. * * *

"The buyers shall pay the real estate taxes due in the year 1975 and any unpaid installments of special assessments payable therewith and thereafter. Sellers warrant that real estate taxes due in the year 1975 will be non-homestead classification.

"Sellers will pay taxes due and payable in 1972 and prior years; buyers will pay taxes due and payable in the year 1973 and subsequent years.

\* \* \* \* \* \*

"This option may be exercised by giving notice and making full payment * * at any time during the primary period from the date of this instrument until 5:30 P. M., July 15, 1975; or during the extension period, if the option is extended as herein provided. The option may be extended only by the sellers signing a written agreement to extend prior to the termination of the primary period.

\* \* \* \* \* \*

"It is agreed that this option agreement contains all of the agreements between the parties with respect to the sale of the above described land."

On July 14, 1975, Janohosky asked for and received an extension of the option term until August 1, 1975. On July 29, 1975, Janohosky exercised the option by depositing $11,372.50 with the clerk of the district court. Notice of this deposit was sent to all creditors of Mormann, including Gordon. Janohosky then obtained quitclaim deeds to the lot from Keyway's trustee in bankruptcy and Mormann.

On October 8, 1976, Gordon obtained writs of execution to satisfy its judgment lien against Mormann. The sheriff levied execution on all of Mormann's right, title, and interest in the property. Notice of the sheriff's sale was given Janohosky by personal service.

Janohosky then moved the district court to enjoin the sheriff's sale and to amend Gordon's judgment to provide specifically that the judgment was not a lien on the property. The district court denied Janohosky's motion. Janohosky then petitioned the district court for a temporary restraining order enjoining the sheriff's sale and for reconsideration and rehearing of his original motion. The district court denied the motion for a temporary restraining order but granted the request for reconsideration and rehearing. The property was sold at the sheriff's sale to Gordon for $9,897.06,

which represents the total of the judgment obtained by Gordon against Mormann in August 1974. Following additional oral argument and legal memoranda the district court reaffirmed its earlier order.

The district court denied Janohosky's motions to enjoin and to set aside the sheriff's sale principally on the grounds that (1) because Janohosky purchased Mormann's interest in the property pursuant to an option agreement, Janohosky's interest in the property was subject to Gordon's judgment lien; and (2) Janohosky had both actual and constructive notice of Gordon's judgment when the option agreement was entered into notwithstanding the failure, due to a clerical error, to enter and docket a portion of the judgment until after the option agreement was executed. Because of our disposition of the case we need address only the effect given the option agreement by the district court. The parties agree that, had Janohosky purchased the property pursuant to the initial purchase agreements, Gordon's judgment lien against Mormann's interest in the property would have been extinguished upon full payment of the purchase price. The issue on appeal is the effect of the option agreement on Mormann's interest in the property.

 As a general rule an option to purchase real property, prior to its exercise, conveys no interest in the land. See *Wurdemann v. Hjelm,* 257 Minn. 450, 102 N.W.2d 811 (1960); *Shaughnessy v. Eidsmo,* 222 Minn. 141, 23 N.W.2d 362 (1946); 8A Thompson on Real Property § 4444 (replacement 1963); 20 Dunnell, Dig. *Vendor and Purchaser,* § 1.01 (3d ed. rev. 1977); 77Am.Jur.2d Vendor and Purchaser, § 27. An option is merely a privilege given by the owner of property to another to buy the property at the latter's election. See *Vogt v. Ganlisle Holding Co.,* 217 Minn. 601, 15 N.W.2d 91 (1944); *City of Minneapolis v. Republic Creosoting Co.,* 161 Minn. 178, 201 N.W. 414 (1924). A closer examination of our cases shows that we have consistently applied the general rule in a variety of contexts.

In *Wurdemann v. Hjelm,* 257 Minn. 450, 102 N.W.2d 811 (1960), the issue was whether an option to purchase land, prior to its exercise, constituted a contract for the conveyance of an interest in real estate within the meaning of Minn.St. 559.21, which governs the procedure for cancelling real estate contracts.[2] In holding that the option contract was not subject to the statutory cancellation proceedings, we said:

"An option to purchase land does not before acceptance vest in the holder of the option an interest in the land. It appears, however, that there are some authorities which hold that because an option may be assigned and transferred and the optionee may have it enforced by specific performance it constitutes an interest in land. In *Knight v. Chamberlain,* 6 Utah 2d 394, 315 P.2d 273, it was held that a valid option to purchase is an interest in real estate within the meaning of the statute of frauds requiring such options to be in writing. We held to the contrary in *Shaughnessy v. Eidsmo,* 222 Minn. 141, 145, 23 N.W.2d 362, 365, 166 A.L.R. 435, where we said that a contract conferring an option to purchase vests in the optionee 'only a right *in personam* to buy at his election.'" (Footnote omitted.) 257 Minn. at 460–61, 102 N.W.2d at 818.

In *Shaughnessy v. Eidsmo, supra,* the defendant argued that an oral lease agreement containing an option to purchase the premises upon expiration of the lease fell within the statute of frauds. Addressing the effect of the option itself on the issue we responded with the following language:

"[A] contract conferring an option to purchase is nothing more than an irrevocable and continuing offer to sell, and conveys no interest in land to the op-

2. Minn.St. 559.21 reads, in part, as follows: "When default is made in the conditions of any contract for the conveyance of real estate or any interest therein, whereby the vendor has a right to terminate the same, he may do so by serving upon the purchaser, his personal representatives or assigns, either within or without the state, a notice specifying the conditions in which default has been made, and stating that such contract will terminate * * *."

tionee, but vests in him only a right *in personam* to buy at his election. At best it is but an irrevocable right or privilege of purchase and does not come within [the statute of frauds]." 222 Minn. at 145, 23 N.W.2d at 365.

See also *Vogt v. Ganlisle Holding Co., supra,* (action for specific performance of an option to purchase land must be predicated on exercise of the option within the time period provided by the option). Thus, in the context of these cases, we have applied the general rule that an option to purchase land conveys no interest in the property.

Gordon urges us to apply the general rule to this case. Gordon's position is that, by entering into the option agreement, Janohosky forfeited his equitable interest in the property acquired by virtue of his capacity as vendee under the initial purchase agreements.[3] Thus, subsequent to the option agreement but prior to its exercise, Mormann possessed both the legal and equitable interests in the fee, to which Gordon's judgment lien attached.[4] Therefore when Janohosky exercised the option he purchased the property subject to Gordon's judgment lien. Were the option contract the only agreement between the parties we might apply the general rule. To do so here, however, would require us to divorce the option contract from the facts of this case.

■ Initially we note that the contract is not a true option agreement. The contract provided that "the buyer shall not be obligated to complete the purchase of the property . . . or to incur any penalty by forfeiture of earnest money deposits . . unless the buyers receive a statement issued by the Federal Housing Commissioner set-

ting forth the approved value of the property for mortgage purposes of not less than $47,450.00. * * * " Thus sellers' remedies under the contract were conditioned on the buyer's obtaining the necessary statement. Further the contract provided that the sellers would be responsible for judgments, liens, etc., up to but not exceeding $10,000 and that the proceeds of the purchase price up to that amount would be used to clear up judgments. More important to our decision than the contract itself, however, are the facts which preceded the option contract. Furthermore, the parties entered into a number of purchase agreements preceding the option contract. Under the authority of those agreements Janohosky not only had a home built on the property but also had been in possession of the property in excess of 3 years. Further, Janohosky already had paid a total of $47,680. In addition the option contract involved the same property, the same vendor, the same vendee, and the same purchase price. Clearly the option contract was an integral part of the entire transaction between Janohosky and Mormann.[5] Under all of these circumstances we hold that Janohosky has an equitable interest in the property superior to Gordon's rights as a judgment creditor.

■■ The basis for our holding is that, notwithstanding the general rule, the holder of an option may under certain circumstances have an interest that equity will protect. For example, an option to purchase real estate contained in a lease agreement is enforceable in equity against the lessor's transferee with actual or constructive notice of the option. See *Texas Co. v.*

---

**3.** See *Wilder v. Haughey,* 21 Minn. 101 (1874) (vendee of a contract to purchase land is treated in equity as equitable owner of land.) Gordon also argues that Janohosky forfeited his equitable interest in the property when he failed to comply with the terms of the May 14, 1974 purchase agreement. Gordon's position is not well taken. Janohosky was in possession of the property and had made a part payment of the purchase price. Quite clearly Janohosky had an interest in the property which could be cancelled only pursuant to Minn.St. 559.21, see footnote 2 supra, notwithstanding the express

terms of the contract. See *Mathwig v. Ostrand,* 132 Minn. 346, 157 N.W. 589 (1916).

**4.** Minn.St. 548.09 provides that a judgment "shall be a lien, to the amount unpaid thereon, upon all real property, in the county then or thereafter owned by the judgment debtor."

**5.** Janohosky's conduct, by seeking an extension of the option agreement, and Mormann's conduct, by granting the extension, reinforce our conclusion.

*Butler,* 198 Or. 368, 256 P.2d 259 (1953); *Moore v. Kirgan,* 250 S.W.2d 759 (Tex.Civ. App.1952); 49 Am.Jur.2d Landlord and Tenant § 377. Notice of the existence of the option may be provided by the lessee's possession pursuant to the terms of the lease. See, e. g., *Durepo v. May,* 73 R.I. 71, 54 A.2d 15 (1947); Annotation, 37 A.L.R.2d 1112. Further, the holder of an option to purchase real estate may maintain an action for specific performance against a purchaser who with knowledge of the option acquired subsequent interests in the property. See *Cwiakala v. Giunta,* 23 N.J.Super. 261, 92 A.2d 849 (1952); *but cf. Gautier v. Lapof,* 91 So.2d 234 (Fla.1956) (holder of option has neither legal nor equitable title in property sufficient to maintain an action for declaratory judgment); *Durfee Housing Furnishing Co. v. Great Atlantic & Pacific Tea Co.,* 100 Vt. 204, 136 A. 379 (1927) (holder of option does not have legal title in property sufficient to maintain an action in ejectment). Analogously, in *Meyers v. Markham,* 90 Minn. 230, 96 N.W. 335, 787 (1903), we held that a vendee under a contract for the sale of land may, where the vendor subsequently conveys the land to a third party with notice of the contract, seek performance of the contract against the third party.

It is clear, then, what the priorities of the parties would be were Gordon a purchaser with actual or constructive notice rather than a judgment creditor. Gordon, by virtue of Janohosky's possession and occupancy of the property prior to Gordon's "purchase" of the property,[6] would have notice of the existence of the option agreement. Thus, Janohosky's interest under the option agreement, capable of being specifically enforced, would be superior to Gordon's rights as a purchaser with notice of the option. We see no rationale for distinguishing this case from those just cited. Nor should Gordon's rights as a judgment creditor with notice of the option be any greater than a purchaser similarly situated. Therefore, upon exercise of the option, Janohosky had an equitable interest in the property superi-

or to Gordon's rights as a judgment creditor.

Our decision is not without support. In *Donnally v. Parker,* 5 W.Va. 301 (1872), the West Virginia Court of Appeals held that the holder of an option to purchase land, upon giving notice of its exercise, has an equitable interest in the land which relates back to the date of the giving of the option. Thus the option holder's equitable interest in the land is superior to intervening rights acquired with notice of the option. See *Donaldson v. Thousand Springs Power Co.,* 29 Idaho 735, 162 P. 334 (1916); Annotation, 50 A.L.R. 1314, 1321; 77 Am.Jur.2d Vendor and Purchaser § 39. Cf. *Sontag v. Abbott,* 140 Colo. 351, 344 P.2d 961 (1959) (holder of option is owner of property within meaning of mechanic's lien statute). While we recognize that there is authority to the contrary, see, e. g., *Sheeby v. Scott,* 128 Iowa 551, 104 N.W. 1139 (1905); 46 Am.Jur.2d Judgments § 299; we decline to follow them under the facts in this case.

Gordon also argues that, whether the agreement is labeled an option agreement or a purchase agreement, it is a new and distinct contract constituting a material modification of the terms of the initial agreement. So viewed, the agreement must be regarded as a new purchase vis-a-vis Gordon as a judgment creditor. Gordon's position is supported by language in *Coolbaugh v. Roemer,* 30 Minn. 424, 15 N.W. 869 (1883).

In *Coolbaugh* the owner of certain property entered into a contract for deed with Roemer obligating herself to convey title to Roemer upon payment of the purchase price. Several years later, after a judgment creditor had docketed two judgments against her, the owner executed a deed for the property to Roemer and took back a mortgage without interest to secure the unpaid portion of the purchase price. Because the conditions of payment were materially changed, the court ruled that the transaction between the owner and Roemer

---

**6.** "Purchase" is used merely for purposes of illustration. Janohosky's possession preceded the date Gordon's judgment was docketed against Mormann's interest in the property.

subsequent to the docketing of the judgments must be regarded as a new purchase as far as the judgment creditor is concerned, not merely the performance of the original contract.

We think *Coolbaugh* is not controlling authority. We must look to the essential nature of the transaction. *Keith v. Albrecht,* 89 Minn. 247, 94 N.W. 677 (1903). As noted previously the option contract involved the same parties, the same property, and the same basic purchase price. Viewed in that light, Janohosky's exercise of the option agreement represents "the performance of the original contract" so far as Gordon is concerned. We have considered Gordon's other arguments and find them to be without merit.

The district court's order denying Janohosky's motion to set aside the sheriff's sale is reversed and remanded for disposition not inconsistent with this opinion.

OTIS, and PETERSON, JJ., took no part in the consideration or decision of this case.